BAILEY GIBSON, Respondent, v. MISSOURI TOWN MUTUAL INS. CO., Appellant.

82 | 515
100 | ¹514

Kansas City Court of Appeals, February 5, 1900.

1. **Insurance: SAFE: BOOKS: INVENTORY: WAIVER.** Under the stipulations of an insurance policy, the insured had an option to keep his books and inventories in a safe in the building or in some other safe place; and the evidence fails to show any waiver of such stipulation before or after the loss as there was nothing done to change the insured's position.

2. ———: STATUTE: THREE-FOURTHS VALUE: VALUED POLICY. Under the act of 1895 an insurance company is restricted from taking a risk at more than three-fourths of the value of the property insured; but when the value is fixed and the risk taken at a given amount, that sum can not be questioned and the policy is a valued policy for that amount.

3. ———: ———: VALUED POLICY: DEPRECIATION. The fact that under the statute the policy is a valued one will not prevent the amount being reduced by depreciation, decay or salvage.

4. ———: STATUTORY CONSTRUCTION: TOWN MUTUAL. The act of March 21, 1895, only relieves town mutual insurance companies from the operation of the general statute of 1889, and does not affect the act of March 18, 1895.

Appeal from the Jackson Circuit Court.—*Hon. E. P. Gates,* Judge.

AFFIRMED SI

Gibson v. Mo. Town Mut. Ins. Co.

*W. M. Bressler* and *Fyke, Yates, Fyke & Snider* for appellant.

(1) Plaintiff's pleadings admit that he failed to comply with the conditions of the contract requiring him to keep books, showing his purchases and sales, and to keep the same in a safe place, secure from' fire, which might destroy the building. There is no evidence whatever that there was any waiver of that condition. Consequently, so far as the stock of wines, liquors, cigars and tobacco is concerned, plaintiff is not entitled to recover and the court should have sustained defendant's motion for new trial. Crigler v. Ins. Co., 49 Mo. App. 11. (2) The court erred in permitting plaintiff to testify, over defendant's objections, that defendant's agent was frequently in plaintiff's saloon and had an opportunity to know that plaintiff had no iron safe. Such fact was no evidence of a waiver by defendant of the condition requiring plaintiff to keep his books in an iron safe or other secure place. (3) The instruction given by the court for plaintiff is clearly erroneous. Plaintiff was not entitled to recover the reasonable cash value of the fixtures and stock, not exceeding the amount insured. He was entitled to recover only three-fourths of the cash value of the property at the time of the fire, not exceeding the amount of insurance on each item respectively. Singleton v. Ins. Co., 45 Mo. 250; Blim v. Ins. Co., 85 Maine, 389; 2 May on Ins. [3 Ed.], sec. 425, p. 981. (4) The verdict is excessive. Plaintiff not being entitled to recover for the loss of the wines, liquors, cigars and tobacco.

*Harkless, O'Grady & Crysler* for respondent.

(1) Crigler v. Ins. Co., 49 Mo. App. 11; McCollum v. Ins. Co., 61 Mo. App. 352; Parsons v. Ins. Co., 132 Mo. 583; Okey v. Ins. Co., 29 Mo. App. 105; Herndon v. Ins. Co., 45

Mo. App. 426; Wooldridge v. Ins. Co., 69 Mo. App. 413. (2)   Forfeiture of policies of insurance is not favored and conditions which are claimed as forfeitures will be strongly construed against the party making them.   McFarland v. Ins. Co., 124 Mo. 204; McCollum v. Ins. Co., 61 Mo. App. 352. This policy contained the clause that they should only be liable for three-fourths of its cash value.   The legislature has provided for this matter.   Session Acts 1895, page 194. Warren v. Town Mutual, 72 Mo. App. 188.   In that case the court held that the law which exempted these Town Mutual Companies, to-wit, the laws of 1895, page 200, meant only to exempt them from the provisions of the law in chapter 89 of the Revised Statutes of 1889.   The Act of 1895, page 194, applies to all companies in so far as it affects the three-fourths clause question, and hence there is no merit whatever in plaintiff's contention against the instruction as to the measure of the damages.   And the instruction was correct in confining it to the "reasonable cash value," because that is precisely what the policy said upon the subject.

ELLISON, J.—This action is based on a policy of fire insurance issued to plaintiff, insuring his building for $300, his saloon fixtures for $300 and his stock of liquors, cigars and tobacco for $200, all in the town of Buckner.   In the trial court the finding was for plaintiff, save as to the insurance on the building.   Defendant appeals.

The policy contained the following provision:   "In case the assured does not take an inventory of the stock hereby covered at least once a year during the life of this policy, and in the event that no inventory of such stock has been made within one year prior to the date of this policy, then the assured agrees to make such inventory immediately upon the acceptance of this policy, and shall keep books of account, correctly detailing all purchases and sales of said stock, and shall keep said inventory and books securely locked in a

fire-proof safe, or in some place secure against fire, in, another building, during the hours said store is not open for business, and in case of loss the assured agrees and covenants to produce such books and inventory whether the loss occurs during the hours the store is open for business or not, and in the event of failure to produce the same on demand, this policy shall be null and void, and no suit or action at law shall be maintained thereon for such loss."

It was conceded that plaintiff did not keep an iron safe; that he did not keep his books, accounts and inventories in any place away from the building; and that he did not keep any books of account correctly setting forth all purchases and sales of stock. The evidence shows that the only thing he had or kept was a small book which he carried in his pocket, and in which he put down, at night, the amount of cash he took in that day. And the evidence shows that after the fire defendant's agent demanded that he produce his books. In short, the case shows that there was no compliance with the clause of the policy above quoted and plaintiff relies, in support of the judgment, on a waiver by defendant's agents.

I.   The evidence in the case fails to disclose anything tending to show a waiver. The defendant's agent, who took the insurance wrote the application and read it over to plaintiff. It was written in plaintiff's saloon, a room about 16 by 30 feet in size, and plaintiff testified that the agent could plainly see that there was no iron safe in it. If we concede that he could, it would not be evidence that plaintiff would not procure one in order to comply with his agreement. The contract was not that he already had a fire-proof safe in which to keep his books, but that he would (that is, after the taking effect of the policy) keep one. But plaintiff further testified that the agent was frequently, after that, in his saloon and could have observed that he did not have a safe. So, if we grant this too, still there is nothing to show that he was not keeping his books, etc., at some other safe place

in another building, and thus complying with the contract. The provision for a fire-proof safe was not absolute. The contract was that he should keep one, or if he did not, that he would keep his books, inventories, etc., "in some place secure against fire in another building." Crigler v. Ins. Co., 49 Mo. App. 11.

But it is urged that forfeitures are not favored and that the policy, while providing that books and inventories shall be kept in a fire-proof safe, or in a safe place in another building, did not provide that it should be void if this was not done; that the only provision avoiding the policy was in case of loss and plaintiff failed to produce such books and inventories after a demand for them. Passing by all questions of warranty and all representations in application, and granting plaintiff properly construes the policy, the testimony of plaintiff himself shows that the books were demanded. The adjusting agent called for the books and plaintiff told him he had no books, that the only book he kept was the little book which he kept in his pocket in which he put down the amount of cash resulting from his daily sales. The agent told him he could not do anything for him; that his book amounted to nothing.

We are cited to the cases of Parsons v. Ins. Co., 132 Mo. 583, and McCollum v. Ins. Co., 61 Mo. App. 352, as supporting plaintiff's view of waiver. Neither of these has any application to this case, for the reason that this case lacks the essential facts which controlled those. In those cases the insurance companies, after a knowledge of the forfeiture, by their conduct induced and led the assured into further labor, trouble and expense under the idea that they would then be paid for the loss shown. Here, there was nothing whatever of that kind. The assured was not led into any expense, and nothing was done save to say to him, when it was discovered he had not complied with the policy, that he could do nothing for him. It is true that the agent asked for the policy and upon

plaintiff telling him he had it in the hands of an attorney in Kansas City the agent asked him to send for it, that he did so and got it next morning. That the agent did not do anything the next day, as he was engaged with another party. Plaintiff says he told him he would see him about four o'clock.

"I went over and he says I think you and me can settle in a few minutes. I says Mr. Bressler, I hope we can; I don't want anything only what is just right. I went over and he says, I can not do anything this evening. I am looking for some important letters on the night train. He says I will see you in the morning. He says me and you can settle in a few minutes. A few minutes before the nine o'clock train came in the next morning, he came over and he told me, he says Gibson, I can not do anything for you."

Here nothing was done by the agent to change plaintiff's position the slightest. He sent for his policy, but that was only doing what his duty was. It was his duty to have the policy at hand, and it is not pretended that this act aided the waiver contended for.

Not having kept any books and inventory in a safe place as agreed; and not having kept any books at all of the kind agreed upon, and no waiver having been shown, it follows that plaintiff has no case as to the stock insured at $200.

2. As to the insurance of fixtures at $300, the defendant claims that as the policy provides that there shall only be a recovery of three-fourths of the actual cash value of the property, plaintiff should not have recovered more than three-fourths of the sum insured. Under the laws of 1895, page 194, the position is not tenable. That part of the enactment referring to this question is as follows:

"No company shall take a risk on any property in this state at a ratio greater than three-fourths of the value of the property insured, and when taken its value shall not be questioned in any proceeding."

We interpret this statute to enjoin upon the insurance company not to take a risk at more than three-fourths of the value of the property insured, but that when the value is fixed and the risk taken on a given amount that sum can not be questioned afterwards, though it should, in fact, be more than three-fourths of the value. So that the practical effect of the statute is to make a valued policy. It is practically the same, in this respect, as section 5897, of the general statute of 1889.

3. Though in respect to personal property, if a portion of it should be disposed of between the insurance and the loss, the value of such portion would be deducted from the loss, as it would be if a portion was saved from the fire. So if there was a depreciation in value from any of the variety of causes which affect property by use, decay or otherwise, as by accident or casualty, such difference in value arising by reason of an intervening cause should be allowed in fixing upon the amount of the loss. For this would not be a changing of value as fixed by the parties; the change would arise from a cause supervening; that is, outside the act of the parties.

4. But it is claimed that the law afterwards enacted at the same session (Laws 1895; page 200) exempts town mutual companies, such as defendant is, from the operation of the aforesaid act of 1895, page 194. The latter act is general and in terms applies to all insurance companies.

We held in Warren v. Ins. Co., 72 Mo. App. 188, that the terms of the act of 1895, page 195, in reference to furnishing blanks for proofs of loss, were general and included town mutual companies; and that the act of 1895, page 200, exempting mutual insurance companies from the operation of general insurance laws, did not exempt them from furnishing blank proofs of loss, since the act requiring all companies to furnish such proofs was general enough to cover all companies; and the exempting act only exempted them from the provisions of the general statute of 1889. So we hold in this case that the

exemption act of 1895, in terms, only relieves town mutual insurance companies from the operation of such general statute, and that it does not affect the act of 1895, page 194, above set out. So therefore, notwithstanding section 5897 of the general statute creating valued policies and this later law of 1895 are practically alike, in that each makes a valued policy, as we have stated, yet the exemption act of 1895 is so worded that its effect is limited to the general statute only, and does not apply to the valued policy act of 1895.

It is proper to add that the effect of the latter act was not argued or brought to the attention of the court in Warren v. Ins. Co., *supra*.

We will therefore affirm the judgment if plaintiff will, within ten days, enter a remittitur of $200, and proportionate interest included in the verdict, this being the insurance on the stock. Otherwise, the judgment will be reversed and the cause remanded. All concur.