BURGE BROTHERS, Respondents, v. GREENWICH
INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, April 12, 1904.

1. **INSURANCE: Proofs of Loss: Waiver of Verification.** Where
a policy of fire insurance on a stock of goods required proofs
of loss to be sworn to by the insured, and the local agent of
the insurer, with authority to represent it in making contracts
of insurance, collecting premiums and signing policies, told the
insured that it would be sufficient for a certain employee in
the store to sign them, the stipulation in the policy was thereby
waived and verification by such employee was sufficient.

2. ———: **Valuation: False Statement.** Where the insured, in an
action for a loss, testified that the stock of goods insured was
worth $8,500 when the fire occurred and had been maintained
at a valuation running from $7,000 to that, an affidavit made
by him, just prior to the writing of the policy, for the purpose
of taxation, that the property was only worth $2,000, which
he explained was about the usual proportion of its true value
according to the scale at which property was assessed, did not
preclude his recovery on the ground of false swearing, but
only went to his credibility as a witness and was a question
for the jury.

3. ———: ———: **Concurrent Insurance.** A prohibition in an in-
surance contract against concurrent insurance on the prop-
erty covered, beyond a designated limit, is enforced, and an
intentional violation of it, or a violation of it to considerable
degree, avoids the policy if the property is of a permanent
character and expected to remain intact during the life of the
policy.

4. ———: ———: ———. But where a policy on a stock of
merchandise, of fluctuating values, contained a stipulation
which limited concurrent insurance so that the total should
be only three-fourths of the cash value, accompanied by an
additional stipulation that the insurer should only be liable for
three-fourths of its proportion of the cash value of the goods
at the time of the loss, a total insurance of more than three-
fourths of the value of the goods at the time of the loss would
not necessarily avoid the policy, because the amount to be paid
was limited by the cash value of the property when the fire oc-
curred.

5. ——: Valued Policy: Proof of Value. Under section 7979, Revised Statutes 1899, a policy of insurance on chattels becomes a valued one to the extent of precluding the insurer from denying that the chattels insured were of an estimated value when the insurance was written; but, when a stock of merchandise of changing character is involved, an insurer may show a reduction in value had occurred prior to the fire.

6. ——: ——: Representation: Concurrent Insurance: Warranty. Under section 7974, Revised Statutes 1899, a stipulation against overinsurance is not a warranty but a representation only, and does not materially affect the risk, when the indemnity to be paid is limited by the cash value of the stock when the loss occurred.

7. ——: ——: ——: Jury Question. A substantial compliance with such provision is sufficient for the validity of the policy and whether there has been such a violation as to increase the risk is a question for the jury.

Appeal from Barry Circuit Court.—*Hon. H. C. Pepper,* Judge.

AFFIRMED.

*Sebree & Farrington* and *George Hubbert* for appellant.

(1) Respondents' fraudulent claims and false swearing are sufficient to defeat the action. Pearl F. Burge admittedly swore falsely concerning the subject of the insurance, notably in this, that he testified that the respondents had maintained the stock at not less than the value of $6,000 or $7,000 and as high as $8,500 from early in 1891 to the date of the loss, and yet he made oath that the value was $2,000 in the spring of 1901; and well informed, disinterested men put the value at about $3,500 to $4,000 at most, when he put it at double that and more. The admission that the whole insurance was more than three-fourths the value of the insured property stamps the claim of respondents, in the face of the express stipulations of the policy, as fraudulent prima facie. The testimony of such a party

so effectually contradicted and impeached, is not entitled to consideration—it is "no evidence." State v. Huff, 161 Mo. 459; Weltmer v. Bishop, 171 Mo. 116; Payne v. Railroad, 136 Mo. 583. (2) The excessive insurance, in flat violation of the terms of the policy, and for which it declares itself void, defeats any just recovery by respondents. After most deliberate and mature consideration, Pearl Burge fixed the value of the insured property at not more than $7,116.85, under oath; when the value must be at least $7,800 to warrant the admitted $5,850 insurance, without making the whole policy void under the contract between the parties. To save such consequence the trial court necessarily made and enforced a new contract between the parties, or assumed they had made quite a different one from what we find in the policy unless we ignore the above-mentioned clause altogether. 2 May on Ins., p. 795, sec. 364a; 13 Am. and Eng. Ency. Law (2 Ed.), p. 300; Reitmiller v. Fire Assn., 38 Mo. App. 118; Dolan v. Town Mut. Co., 88 Mo. App. 666; Barnard v. Ins. Co., 27 Mo. App. 26; Dietz v. Ins. Co., 38 Mo. 85; Bahner v. Ins. Co., 17 Atl. 983. Besides, our statute restricts the contract to a risk of only three-fourths the value; and certainly the courts should not favor a contract to the contrary; nor construe a policy which complies with the law; in terms, to be outside the law or non-effective between the parties. (3) Compliance with the terms of the policy requiring proofs of loss of a certain character is a necessary precedent condition to the right of recovery, unless a waiver thereof be proved. Porter v. Ins. Co., 62 Mo. App. 520; Burnham v. Ins. Co., 75 Mo. App. 394. And proofs required to be made, signed and sworn to by the assured can not be made by an agent of the assured, so as to comply with the requirements. Exceptions to this rule can arise only out of the necessities of the case, as in the event of insanity, absence of the assured from the country, or peculiar knowledge of the agent in charge of the subject-matter; but there is noth-

ing here to intimate such necessity. 7 Am. and Eng. Ency. Law (2 Ed.), 1048; 13 Am. and Eng. Ency. Law (2 Ed.), p. 332; Sims v. Ins. Co., 47 Mo. 54; Clement on Fire Ins., p. 206. (4) What can there be said in support of the action of the trial court in leaving to the jury the duty of determining under the respondents' first instruction whether they had complied with the conditions required by the terms of the policy? That could be done only by first ascertaining from the contract what those conditions or terms were. Gas Light Co. v. Amer. Fire Co., 33 Mo. App. 348; Edwards v. Smith, 63 Mo. 119; Peterbaugh v. Township Board, 53 Mo. 470; Chapman v. Railroad, 114 Mo. 542. (5) There has been no waiver of the conditions of the policy under discussion. So far as the action of the appellant proceeded upon the supposition that the statement in evidence constituted the required proofs of the assured, it must be borne in mind that appellant was deceived into such action by the use of the forms furnished to the respondents by a mere agent, not known to be such. And there could be no waiver under such circumstances of ignorance upon the part of the appellant; and waiver of one does not imply waiver of another. 16 Am. and Eng. Ency. Law (2 Ed.), p. 939. (6) It is no waiver of proofs of loss for a defendant to plead non-liability on the ground, also, that the loss was not within the conditions of the policy. Dezell v. Fidelity Co., 75 S. W. 1102. Waiver is sometimes said to be distinguished from estoppel, and to depend upon intention; but mere intention can not constitute waiver. Frank v. Ins. Co., 60 Mo. App. 673; Stiepel v. Ins. Co., 55 Mo. App. 224. Indeed it is held that, "There must be something in the conduct of the insurer in the nature of estoppel, to constitute a waiver of a condition in a policy. The insurer must have done something, or omitted to do something which has misled the assured and caused him to believe that would not be expected of him which later is claimed he should have performed." Porter v. Ins. Co., 62 Mo.

App. 520; Grigsby v. Ins. Co., 40 Mo. App. 276; Hanna v. Ins. Co., 36 Mo. App. 538; Leigh v. Ins. Co., 37 Mo. App. 542; Erwin v. Ins. Co., 24 Mo. App. 151. "Waiver" and "estoppel" are interchangeable terms, is the prevailing opinion. 16 Am. and Eng. Ency. Law (2 Ed.), 935.

*French & Mayhew* for respondents.

(1) After the fire P. E. Burge a member of the firm talked to Mr. Manley over the telephone, recognized his voice, Manley told him it would be all right to send his father over to make proof of loss. Proof was regularly made and signed Burge Bros., by W. D. Burge. This statement was sworn to by W. D. Burge before C. D. Manley, agent of the company who was well acquainted with the Burge brothers and also W. D. Burge the father of the Burge brothers and knew he was not a member of the firm, and knew that the father stayed in the store, and was familiar with the surroundings, and Mr. Manley wrote the policy in this case. This was sufficient. 13 Am. and Eng. Ency. Law (2 Ed.), p. 332; Sims v. Ins. Co., 47 Mo. 54; Burns v. Fire Ins. Co., 90 N. W. 411, 9 Detroit Leg. N. 154. (2) The power of insurance agents is presumed to be coextensive with the business entrusted to their care, and are not to be narrowed by restriction or limitations not communicated to the party dealing with them. Breckenridge v. Ins. Co., 87 Mo. 62. Manley was acting within the scope of his authority. 16 Am. and Eng. Ency. Law (2 Ed.), p. 942. (3) Absolute denial of liability under a policy, amounts to a waiver of proofs of loss. Keller v. Ins. Co., 95 Mo. App. 628; Ins. Co. v. Stoddard, 64 N. E. 355. Objection to a proof or accompanying papers, that they were not signed by the proper person, comes too late at the trial. Breckenridge v. Ins. Co., 87 Mo. 62. (4) False statement must be material and required or reference to something required by the policy and pre-

judicial to the insurer. 13 Am. and Eng. Ency. Law (2 Ed.), p. 344; Marion v. Ins. Co., 35 Mo. 148; Schulter v. Ins. Co., 62 Mo. 236. (5) If there is any discrepancy in the testimony as to amount of loss, this is a question for the jury. They passed on same and found for respondents. Schulter v. Ins. Co., 62 Mo. 236.

GOODE, J.—The defendant issued a policy of insurance for $1,000, dated June 2, 1901, insuring plaintiffs' stock of general merchandise contained in a building in the town of Purdy, for one year from that date. The merchandise was consumed by fire February 28, 1902, and as the loss was not settled, this action was instituted to compel payment.

Plaintiffs, Henry and Pearl F. Burge, composed a partnership. Proofs of loss were prepared by B. F. Collins, the company's regular adjuster, and were sworn to by W. D. Burge, father of the plaintiffs, but not a member of the firm. He had been employed in the store, however, and was well acquainted with the value of the stock. The evidence goes to show that Collins, as well as John P. Hubble, the general manager of the western department of the company to whom the proofs were sent, supposed that W. D. Burge was one of the insured and had no information to the contrary until long after the proofs had been received and after the sixty days subsequent to the fire, during which, according to the policy, proofs were to be furnished. The policy required the proofs to be signed and sworn to by the insured, and on that provision the defense is founded that the plaintiffs had no standing in court and the jury should have been directed to return a verdict for the company.

The facts connected with the signing and verification of the proofs by W. D. Burge, relieve the plaintiffs from the forfeiture which otherwise would have been produced by non-compliance with the requirement to furnish proofs of loss signed and sworn to by them or

one of them.    The policy in suit was written by C. D. Manley, the defendant's agent in the town of Cassville. Manley was acquainted with the plaintiffs and with their father, W. D. Burge, had frequently met the latter at the store and knew he was not a member of the firm. One day in March, after the fire, Manley called Pearl Burge by telephone and said the proofs were ready to sign and for him to come to Cassville and sign them. Pearl Burge replied that he was going to Peirce City that day and could not go to Cassville, but that he would send his father if he would do just as well.    Manley answered that the father would do as well, and the outcome of the conversation was that the father, W. D. Burge, went to Cassville and verified the proofs.    That the affair happened in this way was not denied, and obviously it estops the company from asserting a defense based on the failure of one of the insured to make the proofs.    Manley was the company's local agent at Cassville, with authority to represent it in making contracts of insurance, collecting premiums and signing policies, which agency carried with it authority to waive proofs of loss, either in writing or orally, or by acts sufficient to constitute an estoppel; there being no proviso in the policy to the contrary so far as the record shows. Nickell v. Ins. Co., 144 Mo. 420.    That the terms of a policy providing for the verification of proofs by the insured may be, under some circumstances, sufficiently complied with by an agent's verification, was decided in Sims v. Ins. Co., 47 Mo. 54.

It is insisted the plaintiffs should have been denied a recovery because Pearl Burge was guilty of fraud and false swearing concerning the amount of merchandise on hand at the time of the fire and the amount of loss sustained by plaintiffs.    Said Burge was examined under oath by a representative of the company after the fire, at Bedford, Iowa, where he resided at the time of the examination.    Then, and on the witness stand during the trial, he stated the value of the stock was $8,500

when the fire occurred and that it had been maintained at a valuation running from $7,000 to that amount; and so the proofs of loss declared. On January 28, 1902, plaintiffs notified the company they had taken other insurance in different companies amounting to $5,000 and running the total insurance up to $6,000. In that notice the stock was valued at $8,534. The supposed conclusive proof of fraud is the fact that on June 3, 1901, prior to the writing of the policy in suit, Pearl Burge made an affidavit to a statement on which the merchant's tax of the firm would be based, that the greatest amount of merchandise on hand between the first Monday in March and the first Monday in June preceding, was $2,000. No court could hold the discrepancy between the affidavit for merchant's license and the representation to the insurance company as to the value of the merchandise, cut plaintiffs off from a recovery on the policy. Pearl Burge explained that he made the statement to obtain a license knowing the goods on hand were worth more than $2,000, because it was customary to value personal property for taxation at much less than its real worth, and that he stated the value of the firm's stock at the proper proportion of its true value according to the scale at which property was assessed. The circumstance went to the credibility of the witness and the whole matter was one to be considered and weighed by the jury in determining whether plaintiffs had been guilty of fraud that would avoid the contract of insurance.

The policy contained these paragraphs:

"*Three-fourths value clause*:—In consideration of the rate of premium at which this policy is written it is a condition of insurance that in the event of loss or damage by fire to the property insured, this company shall not be liable for an amount greater than three-fourths of the cash market value of each item of the same, not exceeding the amount of said policy at the time immediately preceding such loss or damage; and in

the event of other insurance on the property insured, then this company shall be liable only for its proportion of three-fourths of such cash market value at the time.

"This entire policy unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure other contracts of insurance, whether valid or not, on the property covered in whole or in part by this policy, to which is this addition only, viz.: other concurrent insurance permitted but same shall at no time exceed three-fourths of the cash value of each item of the property hereby covered."

As said above, there were six policies of insurance when the store burned and their total amount was $6,000, of which $150 were on furniture and fixtures, leaving $5,850 on the merchandise. That sum was three-fourths of $7,800, and in view of the above clauses of the policy, the defendant's counsel requested an instruction that if the jury found the actual value of the stock when the fire occurred was less than $7,800, the verdict should be for the defendant. The court refused to give that instruction, and instead told the jury if they found a verdict for the plaintiff, it should be for such an amount as would be three-fourths of the value of the goods at the time of the loss, deducting the insurance money received from other companies, and in no case to exceed $889.61, the amount demanded in the proofs of loss. The evidence as to the value of the stock when burned was somewhat uncertain and permitted the conclusion that it was worth less than $7,800. The company's position is that if the value was less than said sum, plaintiffs were carrying excessive insurance, inasmuch as the policy authorized concurrent insurance not to exceed three-fourths of the cash value of each item of property covered, and that carrying insurance beyond that amount nullified the policy.

A prohibition in an insurance contract against concurrent insurance on the property covered beyond a des-

ignated limit is enforced. 2 May, Insurance (4 Ed.), sec. 364; Barnard v. Ins. Co., 27 Mo. App. 26; Dolan v. Ins. Co., 88 Id. 666. The reason for such stipulations and for their legal enforcement is to avoid the risk of incendiary and careless losses by preventing over-insurance. If the property is largely overvalued in taking out a policy which provides for other insurance not to exceed a named percentage of its value, it is plain the way is open to obtain insurance beyond the limit which the first policy contemplated, thereby violating the spirit of that contract. If this is intentionally done, or done to a considerable degree whether intentionally or not, generally speaking, in the absence of legislation to the contrary, it avoids the insurance if the property is of a permanent character and expected to remain intact during the life of the policy. 2 May, Insurance, sec. 373, et seq., and citations.

In the present case we have to deal with a contract of insurance on a stock of merchandise, which, according to the usual course of business would be changing and its value fluctuating incessantly, as must have been expected. The question is whether the limitation in this contract against insurance in excess of three-fourths of the value of the stock bound the proprietors never to let their insurance on the stock exceed three-fourths of its value under penalty of forfeiting their right to indemnity if a loss occurred. The extreme inconvenience, not to say impossibility, of observing such a requirement is at once apparent; and courts and text-writers have declared the rule against over-insurance is not applicable to contract covering commodities kept for sale; or, at least, is not so rigidly enforced. May, sec. 374. Instances of insurance on fluctuating stocks of merchandise are akin in principle to those in which renewals of insurance on the same property occur and meanwhile depreciation in value takes place. Neither fraud nor forfeiture is a necessary concomitant of an affair of that sort. May, sec. 375; Ramsey v. Ins. Assn., 71 Mo. App. 380;

Gerhauser v. Ins. Co., 7 Nev. 174; Lee v. Ins. Co., 11 Cush. 324; Travis v. Ins. Co., 28 W. Va. 583; Iron Co. v. Ins. Co., 5 R. I. 425; Aurora Ins. Co. v. Johnson, 46 Ind. 315. The question at issue was presented to this court for decision in the Ramsey case just cited, which was an action on a policy of insurance covering merchandise. That policy contained stipulations that the company should be liable in case of loss only for three-fourths of the actual cash value of the property, to be prorated with any other companies carrying insurance on it, and that the total insurance permitted was limited to three-fourths the value of the property. The company requested and the court refused an instruction that if the jury found the plaintiffs' total insurance was $3,000 and in excess of three-fourths the value of the goods, plaintiffs could not recover. In passing on the assignment of error based on the refusal of that instruction, the court held that while the stipulations might be material in case of a valued policy, they were not so in the particular case, as the amount to be paid if the merchandise burned was limited by the cash value of the property when the fire occurred. The other decisions we have cited are noticed in the opinion, with the statement that they held overvaluation to be immaterial where the value of the goods at the time of their destruction was made the criterion of the indemnity to be paid.

The argument is advanced that section 7979 of the Revised Statutes made the policy in suit a valued one and that, therefore, the rule against overvaluation should be enforced the same as if the property was realty or personalty of a permanent nature. The last clause of that section provides as follows: "No company shall take a risk on any property in this State at a rate greater than three-fourths of the value of the property insured and when taken its value shall not be questioned in any proceeding."

In Gibson v. Ins. Co., 82 Mo. App. 515, that provision was interpreted to embrace insurance on chattels and

personal property. But if a portion of insured personal property is disposed of between the date of the policy and the loss, or if there is depreciation from any cause, the resultant difference in value can be taken into account in fixing the amount of the loss. We followed that authority in Howerton v. Ins. Co., 105 Mo. App. 575. As construed, the statute precludes a company from deny·ing that insured chattels were of the estimated value when the insurance was written, and to that extent makes the policy a valued one; but when a stock of merchandise, or other personalty of a changing character, is involved, the insurer may show a reduction of value had occurred prior to the fire. In the present case the dispute is not regarding the amount of the stock when the policy was issued, but the contention is that when the fire occurred the worth of the goods on hand did not exceed the insurance carried by one-fourth. The defendant was at liberty to prove what the stock amounted to then and its proportion of the loss could not be more than three-fourths of the loss computed on the worth of the property when burned and prorated with the other insurance. The statute quoted created no cause for changing the rule announced in the Ramsey case, or holding, in opposition to it, that this policy was avoided, *ipso facto,* if the merchandise in stock at the time of the fire had been depleted until the insurance exceeded three-fourths of its value.

Section 7979 of the statutes does not weaken the authority of Ramsey v. Assn., but section 7974 greatly strengthens the reasons for the like result in the present case; for as the law now stands, the stipulation of the policy in suit as to concurrent insurance, is not a promissory warranty as the one in the Ramsey case was declared to be, but is a representation. The latter section (7974) was enacted in 1897, the year the Ramsey case was decided, but took effect after the decision. It reads as follows:

"That the warranty of any fact or condition here-

after incorporated in or made a part of any fire, tornado or cyclone policy of insurance, purporting to be made or assented to by the assured, which shall not materially affect the risk insured against, shall be deemed, taken and construed as representations only in all suits at law or in equity brought upon such policy in any of the courts of this State.''

We find no statute prescribing the test of the materiality of a representation in fire insurance such as there is for life insurance, viz.: that a misrepresentation to be material must contribute to the loss. R. S. 1899, sec. 7890. But Ramsey v. Assn., Lee v. Ins. Co., 11 Cush. 324, and other cases cited above, hold a stipulation against over-insurance of merchandise is immaterial to the risk for the reason that the indemnity to be paid is limited by the cash value of the stock when the loss occurs; an argument not perfectly convincing, but accepted by the courts and the law declared accordingly. Now, if the stipulation regarding other insurance with which we are dealing is immaterial, as the authorities say, the statute last quoted makes it a representation instead of a warranty. The respective effects of those two features of insurance contracts are these: A warranty must be literally complied with and an unimportant breach defeats the contract: if a representation partly fails, but is true, or is complied with, so far as is essential to the risk insured against, the policy remains in force. Plaintiffs' stock of merchandise might have been reduced by sales until its value was so much less than the insurance carried as to increase the risk and thereby infringe the stipulation in defendant's policy regarding concurrent insurance, were it but a representation. On the other hand, the stock might have run somewhat below the required amount without increasing the risk. No more than substantial compliance with the provision was requisite for the validity of the policy. An issue of fact could have been raised on that phase of the case. 4 Joyce, Insurance, sec. 3780; Loy v.

Ins. Co., 52 Maine 60; March v. Ins. Co., 186 Pa. St. 629. But the refused instruction required a verdict against the plaintiffs from the bare fact that the insurance exceeded three-fourths of the value of the stock on hand at the time of the fire, without reference to whether the limitation regarding concurrent insurance was substantially complied with in good faith, or the risk increased by non-compliance.

The defense was made that plaintiffs set the fire; but the evidence to support it, like that relating to other defenses, was far from conclusive and raised an issue for the jury to decide.

We have commented on those assignments of error which are thought to call for argument; minor ones, though not discussed, have received attention.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.