CHARLES E. SURFACE, Respondent, v. NORTH-WESTERN NATIONAL INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, June 12, 1911.

1. **FIRE INSURANCE: Three-fourths Clause: Estoppel: Value of Stock.** This is a suit on a fire insurance policy on a stock of goods, in which the subject of the controversy was "the three-fourths value clause." When the policy was issued, plaintiff's assignor had other insurance aggregating $17,000, and this policy brought his total insurance up to $20,000, at which sum it remained at the date of the fire. *Held*, that whether the risk be one covering real or personal property, the statute intends that the insurance shall not provide indemnity in excess of three-fourths the value of the property, but that when the insurance is issued, the parties are presumed to have obeyed the law and, thereafter are estopped from showing that in fact the insurance was in excess of the statutory limit. Hence, when the policy in suit was issued, the law presumed that the value of the stock was not less than $26,666.66.

2. ———: ———: **Value of Stock After Policy Issued: Value at Loss.** Where the parties themselves without any suggestion of fraud, undue influence, or even mistake, solemnly stipulated in writing that the value of the stock was $19,453, and the total loss $18,787, *held*, that, while the defendant company would be estopped from denying that the stock was worth $26,666, on the date the policy was issued, nevertheless it was perfectly competent for defendant to show the actual value of the stock before the fire, since the insured need not keep his insurance constantly within the three-fourths limit from the date the policy was issued.

Surface v. Insurance Co.

3. ———: Statutes: Sections 7023 and 7030 Construed. Section 7023, R. S. 1909, was intended to suppress the evil practice of some insurance companies of compelling the insured to insure his property up to a high percentage of its value on pain of being held as an insurer himself to the amount of the insurance actually carried by him was in excess of the amount his policy required him to carry. This section (7023, R. S. 1909), was not intended to impinge on the salutary three-fourths rule pronounced in section 7030, nor to prevent the parties from contracting to give practical effect to the spirit of that rule.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

REVERSED AND REMANDED.

*Fyke & Snider* and *Scarritt, Scarritt & Jones* for appellant.

*Reed, Yates, Mastin & Harvey* for respondent.

JOHNSON, J.—This suit is on a policy of fire insurance of $3000 issued by defendant to R. L. Cornett on a stock of general merchandise at Braymer. The policy was issued October 23, 1909, and the property was damaged by fire January 21, 1910. After the fire and before the commencement of this suit Cornett, for a valuable consideration, assigned the policy and his cause of action thereon to plaintiff.

In the petition plaintiff prayed judgment for the face of the policy and interest; for $300 damages for vexatious refusal to pay the loss and for $600 attorney's fees incurred on account of such vexatious refusal. In the answer defendant admitted liability under the policy in the sum of $2188.55 and denied any further liability. The amount in controversy between the parties before the institution of this suit was $811.45, the difference between $3000, the face of the policy, and $2188.55, the amount of the liability acknowledged by defendant, and the subject of the controversy was and is the "three-fourths value clause" attached as a rider to the policy.

A trial of the issues made by the pleadings resulted in a verdict and judgment for plaintiff in the sum of $2973.54, on account of the loss and of $287.20 allowed for the vexatious refusal of defendant to pay the loss. Defendant appealed.

When the policy in suit was issued Cornett had other policies aggregating $17,000 covering his stock and this policy brought his total insurance to $20,000 and it remained at that sum to the date of the fire. Much of the argument of counsel for defendant is based on the assertion that between the date of the policy before us and the date of the fire, Cornett increased his insurance without the consent of defendant, but this contention is not supported by the evidence which shows conclusively that the only policies received by Cornett in that period were renewal policies that did not increase the total sum of the insurance carried in the stock. The three-fourths value clause which, as stated, is the subject of controversy, is as follows:

"Three-Fourths Value Clause."

"It is part of the consideration of this policy, and the basis upon which the rate of premium is fixed, that in the event of loss, this company shall not be liable for a greater amount than three-fourths of the actual cash value of the property covered by this policy at the time of such loss, and, in case of other insurance, whether policies are concurrent or not, then for only its pro rata proportion of such three-fourths value.

Total insurance permitted is hereby limited to three-fourths of the actual cash value of the property hereby covered, and to be concurrent herewith."

Immediately after the fire a representative of defendant and Cornett entered into a written agreement styled a "non-waiver agreement," the gist of which appears in the following excerpt: "In accordance with the within agreement, it is hereby agreed and de-

termined that the sound value of the property immediately preceding January 21st, 1910, and the loss and damage which occurred on that date is as follows:

| Item | Property | Sound Value | Loss and Damage |
|------|----------|-------------|-----------------|
| 1st and only | stock | 19453.82 | 18787.08 |

It is further agreed that the above stipulation as to sound value and loss and damage is not a promise to pay any sum whatsoever and that it creates no liability on the part of the insurance companies signing this agreement, nor does it waive nor invalidate any rights whatever of any party to this agreement.''

It appears in evidence that Cornett was doing business as a general merchant; that during the time the policy was in force he added new goods to his stock costing $3635.44 and that his total sales on which he realized an average gross profit of 40 per cent were $6472.09.

Considered apart from any influence the statutory laws may have over the interpretation and enforcement of the three-fourths clause, the language of of that stipulation which the parties incorporated in their contract is clear and unambigous and the purpose intended to be subserved is one the courts uniformly have commended as most salutary. To prevent the temptation to fraud and even crime likely to be offered by over insurance, the stipulation endeavored to interpose a safeguard by providing a safe margin between the value of the property covered by the insurance and the amount of the indemnity the insurer would be compelled to pay in the event of an approximately total loss. Taking as a basis the actual value of the property covered by the insurance at the time of the loss the stipulation provided, in effect, that in no event should the assured receive a greater indemnity than an amount equal to seventy-five per cent of such actual value. On such basis, had the actual value of the stock been $20,000 just before the

fire and the total insurance $20,000, the insurer would have been liable for only $15,000, notwithstanding the loss exceeded that sum.

Manifestly the parties unhampered by the statutes, had the right to fix the measure of the indemnity in their contract and we turn to the consideration of the effect, if any, the statutory law has on the exercise of such right.

Section 7030, Revised Statutes 1909, provides: "No company shall take a risk on any property in this state at a ratio greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceeding."

Speaking through ELLISON, J., we have said in Gibson v. Ins Co., 82 Mo. App. 515: "We interpret this statute to enjoin upon the insurance company not to take a risk at more than three-fourths of the value of the property insured, but that when the value is fixed and the risk taken on a given amount that sum cannot be questioned afterwards, though it should, in fact, be more than three-fourths of the value. So that the practical effect of the statute is to make a valued policy. It is practically the same, in this respect, as section 5897, of the general statute of 1889."

Whether the risk be one covering real or personal property the statute intends that when issued the insurance policy shall not provide indemnity in excess of three-fourths of the value of the property but that when the policy is issued the parties are presumed to have obeyed the law and, thereafter, are estopped from showing that in fact the insurance was in excess of the statutory limit. It is hardly necessary to add that where the subject of insurance is covered by more than one policy the statutory three-fourths rule contemplates that the total insurance shall not exceed three-fourths of the value of the property. [Hanna v. Ins. Co., 109 Mo. App. 1. c. 159.]

Applying these rules to the case in hand compels us to hold that when the policy in suit was issued, October 23, 1909, and the total insurance on the stock increased to $20,000, the law conclusively presumed that the insurance did not exceed seventy-five per cent of the value of the stock and, therefore, that such value was not less than $26,666.00.

But the courts of this state very properly have disapproved the theory that the statute requires the insured to keep his insurance within the three-fourths limit. Property of all kinds more or less is subject to depreciation and to fluctuations in market value. Especially is this true of stocks of mercandise which, in addition to ordinary depreciation and change in market value, undergo daily alterations from purchases and sales. It is a matter of common knowledge that merchants carry much heavier stocks at some periods of the year than at others and the law does not contemplate the absurdity of compelling them to preserve a fixed margin between the value of their stocks and the insurance carried. Therefore, as Judge NORTONI observed in Stevens v. Ins. Co., 120 Mo. App. 1. c. 108: ''The section of the statute quoted renders the policy on chattels valued only in so far as it precludes the company from denying their value as mentioned when the insurance was written, and aside from this, it does not influence the question in the least. [Howerton v. Ins. Co., 105 Mo. App. 575, 80 S. W. 27; Burge Bros. v. Ins. Co., 106 Mo. App. 244, 80 S. W. 342; Gibson v. Ins. Co., 82 Mo. App. 515.]''

While defendant would be estopped from denying that the stock was worth $26,666.00 on October 23, 1909, it was perfectly competent for defendant to show the actual value of the stock just before the fire on January 10, 1910. As the parties themselves, without any suggestion of fraud, undue influence, or even mistake, solemnly stipulated in writing that the value of the stock on the date of the fire was $19,453.82, and

that the total loss was $18,787.08, we do not find it necessary to hold that their stipulation constituted a binding contract in order to give conclusive effect to the valuation which evidently was fairly and honesty made. The valuation stands wholly uncontradicted by any substantial evidence. It is true plaintiff showed the purchases and sales of goods during the life of the policy together with the average gross profit at which the sales were made, but these are only a few of the many elements of change that might and, doubtless, did affect the stock. It will not do to apply the same rule to a stock in trade that would suffice to measure changes in the value of a building. Even staple articles of merchandise fluctuate almost daily in market value. It was possible for the entire stock to depreciate twenty-five per cent from this cause alone during the life of the policy. The evidence is silent on this subject and we find in the record no inconsistency between the facts that the stock was worth $26,666.00 in October and only $19,453.82 in the following January. There is no room in the evidence for any other reasonable conclusion than that the parties correctly valued the stock in their stipulation.

There is nothing in the provisions of section 7030, Revised Statute 1909, inimical to the enforcement of the three-fourths clause attached to the policy, nor do we find anything in section 7023 on which plaintiff so much relies. We give entire approval to the view of this statute expressed by counsel for defendant in the following language: "It is difficult to see how any of the provisions of this section have any relation to, or effect upon, the clause of the policy in question. It was evidently enacted for the purpose of preventing insurance companies from requiring the insured to become a co-insurer on the property insured. It cannot be successfully claimed that the three-fourths value clause in the policy in suit compels co-insurance on the part of the insured. There is

a vast difference between co-insurance on the part of the insured, and the limiting of insurance to a percentage of the value of the property insured. The one has a tendency to increase the insurance contrary to the policy of the law, and the other to decrease it, which is in accord with the policy of the law.''

That statute was intended to suppress the evil practice of some insurance companies of compelling the insured to insure his property up to a high percentage of its value on pain of being held as an insurer himself to the amount the insurance actually carried by him was in defect of the amount his policy required him to carry. The statute was not intended to impinge on the salutary three-fourths rule pronounced in section 7030, nor to prevent the parties from contracting in a way to give practical effect to the spirit of that rule.

The learned trial judge erred in not limiting the recovery of plaintiff to three-twentieths of three-fourths of $19,453.82. It goes without saying that under the evidence plaintiff is not entitled to damages on account of the alleged vexatious failure or refusal of defendant to pay the loss. The judgment is reversed and the cause remanded.

All concur.