ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# Courts of Appeals

AT THE

MARCH TERM, 1912.

(Continued from Volume 163)

WILLIAM W. SPICKARD, Respondent v. FIRE ASSOCIATION OF PHILADELPHIA, Appellant.

Kansas City Court of Appeals, April 29, 1912.

1. INSURANCE: Three-fourths Valuation: Valued Policy: Estoppel. Under the statute, Sec. 7030, R. S. 1909, an insurance company is directed not to issue a policy of fire insurance for more than three-fourths of the value of the property; but when such value is fixed and the policy issued the company is estopped from asserting that the policy was for more than three-fourths of the value at the date of the insurance (Gibson v. Ins. Co., 82 Mo. App. 515; distinguishing Surface v. Ins. Co., 157 Mo. App. 570); and recovery may be had for the face of the policy less depreciation since date of insurance.

2. ———: ———: ———: Depreciation: Sales: Salvage. But the fact that the policy is thus practically a valued policy will not prevent the amount of liability being reduced by depreciation, sales, decay or salvage.

3. ———: ———: ———: Books: Inventory: Forfeiture. When a policy of fire insurance on personal property provides for keeping of books and inventories and the insurer does not demand their production after the fire, no forfeiture can be had for want of compliance with the policy.

164 Mo. App.—1  (1)

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnes*, Judge.

AFFIRMED.

*J. A. Clark* and *Fyke & Snider* for appellant.

*E. J. Smith* and *W. T. Herndon* for respondent.

ELLISON, J.—Plaintiff's action is based on a policy of fire insurance issued to him by defendant, in the sum of $1200 on his stock of general merchandise and fifty dollars on store furniture. The judgment in the trial court was for the plaintiff in the full amount of the policy.

The policy contained a provision that in the event of loss the company would "not be liable for a greater amount than three-fourths of the actual cash value of the property covered by the policy at the time of such loss, and in case of other insurance, whether policies are concurrent or not, then for only its pro rata proportion of such three-fourths value. Total insurance permitted is hereby limited to three-fourths of the actual cash value of the property hereby covered, and to be concurrent herewith."

Defendant, by its answer, set up that clause, as a partial defense to the amount claimed by plaintiff. The defense was disallowed by the trial court, and that presents the principal question for decision.

The evidence showed that there were two other policies on the property, one for the exact amount of the one in suit, and taken on the same day. The other for $2400 on the stock and $100 on the furniture, taken on the 26th day of March, 1910. The fire occurred on the 1st day of April, 1910, causing a total loss of the property on hand at that time. These policies aggregate $5000. There was evidence in behalf of plaintiff, tending to prove that the value of the goods at the time

of the fire, after allowing for sales and purchases, was $8000, and of the furniture was near $400. Defendant contends that under the terms of the policy as pleaded in its answer, its liability should be measured on a three-fourths value basis; and as there was other insurance, its liability on the policy in suit was its proportion of three-fourths.

Under repeated rulings of the different appellate courts of the state we must reject defendant's view and approve that taken by the trial court. By the terms of the statute (Sec. 7030, R. S. 1909) it is declared that "No company shall take a risk on any property in this state at a ratio greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceeding." This statute has been held to "enjoin upon the insurance company not to take a risk at more than three-fourths of the value of the property insured, but that when the value is fixed and the risk taken for a given amount, that sum cannot be questioned afterwards, though it should, in fact, be more than three-fourths of the value." [Gibson v. Mo. Town Mutual Ins. Co., 82 Mo. App. 515.] It was further held in that case that if between the date of insurance and the fire, the value should be lessened by an excess of sales over purchases in replenishing the stock, such decrease would of course, be deducted from the value; and so likewise would changes lessening the value, arising from other causes, between the issuance of the policy and the fire. And that view of the statute has been several times reasserted by this court. [Seigle v. Ins. Co., 107 Mo. App. 457; Hanna v. Ins. Co., 190 Mo. App. 152; Crossan v. Ins. Co., 133 Mo. App. 594, and in an opinion by the presiding judge in the recent case of Gragg v. Ins. Co., 132 Mo. App. 408.] It was likewise approved by the St. Louis Court of Appeals in Howerton v. Ins. Co., 105 Mo. App. 575, 583, and Stevens v. Ins. Co.,

120 Mo. App. 88, 105-108, where the question is fully considered by Judge Nortoni. It has also met the approval of the Springfield Court of Appeals in an opinion by presiding Judge Nixon in Hilburn v. Ins. Co., 140 Mo. App. 355, 368.

If defendant's insistence that it only contracted to insure for three-fourths of the actual value of the property, and should not be held for more, should be granted, it would not aid its case; for in making practical application of that fact, defendant leaves out of view that the sum named in the policy *is* only three-fourths of the actual value, or less. For, as we have just explained, the company could not insure for a sum in excess of that proportion.

So whenever the property is of the same value at the date of the fire that it was when the insurance was taken, the sum named in the policy is the measure of the insured's loss. And if it is claimed that the property was not so valuable at the date of the fire as it was when insured, the value at the time of insurance will be considered by force of the statute, as a sum of which the face of the policy is three-fourths and that will be the basis for calculation. And by subtracting the amount of depreciation from the total value at the date of insurance (being a sum of which the face of the policy is three-fourths) the remainder would represent the insured's loss. Thus, if the policy was for $3000 that would fix the value of the property at $4000, and if the depreciation was as much as $1000 that subtracted from the total value of $4000 would leave a loss to the owner of $3000, all of which he could recover. If the depreciation was $2000, that would leave the owner's loss at only $2000, and that would be the extent of his recovery. [Stevens v. Ins. Co., 120 Mo. App. l. c. 106-108.]

If there are several policies the same rule of interpretation and basis of calculation obtains. The total value of the property will be considered to be a

sum of which their aggregate amount is three-fourths. [Hanna v. Ins. Co., supra.]

At the argument stress was laid on the tendency to evil results said to be like to flow from the statute which we have discussed. In so doing the views of the Supreme Court on a similar statute, as expressed in Daggs v. Ins. Co., 136 Mo. 382, 394, 395, have been entirely overlooked, caused, perhaps, by the particular matters to which we refer not appearing in the syllabus reported. Strong defense of such statutes and the cause of their enactment is there stated. Judge GANTT, for the court, said:

"The learned counsel for defendant have filed a most elaborate brief, a large portion of which is directed at the supposed bad policy of the statute, an argument much more appropriate before the Legislature than this court. They insist it violates the fundamental idea of insurance, which is indemnity; that it encourages arson; that it increases the cost of insurance.

"The time alloted us will not permit a discussion of such considerations, even if we felt called upon to defend the wisdom of the Legislature. It is well known that the practice of the insurance companies, both life and fire, led to legislation now so strenuously attacked. Promises held forth to the assured in the policies in use when this and similar statutes were enacted had 'too often proven a delusion and a snare,' and, as the courts were powerless to correct the evil, the Legislature interposed, not only in Missouri, but in many of the states of the union, to remedy the wrong.

"The manifest policy of the statute is to prevent, rather than encourage, over-insurance, and to guard, as far as possible, against carelessness, and every inducement to destroy property in order to procure the insurance upon it. It was also designed to prevent insurance companies from taking reckless risks in or-

der to obtain large premiums by advising them in advance that they would be held to the value agreed upon when the insurance was written.

"No company is bound to insure any piece of property without first making a survey and examination of the premises, and it is not compelled to insure the full value then. But having the opportunity to inspect fully before insuring, and then fixing the amount of the risk, and receiving the premium based upon such valuation, it ought to be forever estopped, in case of a total loss, from denying the valuation agreed upon. . . . .

"The policy of the law seems to us wise and wholesome, but, if it were not, it is the province of the Legislature to repeal it, and not ours to usurp legislative authority. More care in the selection of agents and more care in the inspection of the insured property will dispense with many of the objections urged against the policy of this statute.

"Long prior to the enactment of this statute 'valued policies' were in use as the result of contracts. By a 'valued policy' a valuation was fixed in advance by way of liquidated damages to avoid making a valuation after the loss had occurred. Such agreements have been uniformly upheld against the claim that they were wagering contracts . . .; the construction put upon a 'valued policy' being that the sum agreed upon was *conclusive,* both at law and in equity, *save in cases of fraud.*"

Defendant cites as sustaining its position the recent case in this court of Surface v. Ins. Co., 157 Mo. App. 570. The rule we have stated as having been decided by each of the appellate courts of the state is expressly recognized in that case and quotation is made from Gibson v. Ins. Co. But it appears in that case that there had been a depreciation of the property, by sales and otherwise, after the policy was issued, and that the parties, seemingly ignoring the

terms of the policy as fixed by law, made an agreement fixing the value of the property at the date of the fire and of the amount of the owner's loss. The rights of one party and the liability of the other as determined by the policy and by the statute were ignored. That agreement governed the judgment in that case.

Objection was made to evidence of the value of the goods at the time of the fire on the ground that it was not alleged in the petition. The petition was amended so as to show value, and the objection was therefore properly overruled.

There was an iron safe clause in the policy and it is claimed that plaintiff failed to make inventories and to keep books showing sales and credit and for cash, as well as purchases in replenishing stock, and to produce such books and inventory. There was no demand made of plaintiff after the fire to produce books and inventories, and cause of forfeiture on that ground was thereby waived. [Carp v. Ins. Co., 116 Mo. App. 528; Porter v. Ins. Co., 62 Mo. App. 526.]

But aside from the consideration just mentioned, we think the evidence showed substantially all that was necessary as to the value of the stock at the time of the fire. An inventory of the stock had been taken in duplicate. Plaintiff lost the copy retained by him, but he secured the other copy and it was put in evidence. An account of sales, on credit and for cash, was kept in a book burned in the fire, but the entries in this book were copied and this was in evidence.

It is clear that defendant considered that plaintiff's claim was fraudulent and he was charged with false swearing as to the value of the goods and the cause of the fire, but that issue was submitted to the jury.

After examination of each of defendant's complaints we see no cause for interference, and affirm the judgment. All concur.