HAVENS *et al.* v. THE GERMANIA FIRE INSURANCE COMPANY *et al.*; SAGE *et al.*, *Appellants.*

In Banc, June 25, 1894.

1. **Insurance**: POLICY: STATUTE. The stipulations of an insurance policy must yield to the provisions of the statute applicable thereto.

2. **Fire Insurance**: CONCURRENT POLICIES: STATUTE. Where several concurrent fire policies have been written on a building which is wholly destroyed, each company is liable for the full amount of its policy, under Revised Statutes, 1879, section 6009.

3. ———: MACHINERY: REAL PROPERTY. Machinery used in a flour mill is real property within said section 6009, Revised Statutes, 1879.

4. ———: REAL AND PERSONAL PROPERTY: CONTRACT. An agreement between a company and the insured that real property shall be considered personalty is invalid.

5. ———: MACHINERY: PARTIAL LOSS. Where, at the time of the burning of a mill insured against loss by fire, a part of the machinery is in another building pending improvements, the fact that the removed machinery was not destroyed will not render the loss a partial one, but its value will be deducted from the amount of the policy.

6. ———: STATUTE: "WHOLLY DESTROYED." The words "wholly destroyed" as used regarding an insured building in Revised Statutes 1879, section 6009, mean that the building is totally destroyed as such, though there is not an absolute extinction of all its parts.

Havens v. Fire Ins. Co.

*Appeal from Jackson Circuit Court.*

REVERSED.

*Warner, Dean & Hagerman,* for Sage, McAdam and Harrington, appellants.

(1) The court having found that the property insured was totally destroyed, should have assessed the damages at the amount· of insurance written in the several policies. R. S. 1879, sec. 6009; *Ampleman v. Ins. Co.,* 35 Mo. App. 308; *Ampleman v. Ins. Co.,* 35 Mo. App. 317; *Barnard v. Ins. Co.,* 38 Mo. App. 106; *Reilly v. Ins. Co.,* 43 Wis. 388; *Thompson v. Ins. Co.,* 45 Wis. 388; *Oshkosh Co. v. Ins. Co.,* 71 Wis. 454; *Ins. Co. v. Leslie,* 24 N. E. Rep. (Ohio) 1072; *Emery v. Ins. Co.* 52 Me. 322. (2) The object the legislature had in view in the enactment of section 6009 was to make policies of insurance upon buildings, whether owned separately or in common with the land upon which they are situate, "valued policies," except in cases of fraud or criminality on the part of the insured, and thereby establish a sound public policy, obviate unconscionable disputes by insurance companies as to the value of destroyed property, prevent over-insurance and the exaction of extortionate premiums. *Reilly v. Ins. Co.,* 43 Wis. 449; *Thompson v. St. Louis Co.,* 43 .Wis. 462; *Thompson v. Ins. Co.,* 45 Wis. 389. (3) When a statute is founded on public policy parties can not waive its provisions by express contract. *Reilly v. Ins. Co.,* 43 Wis. 449; *Railroad v. Peavy,* 29 Kan. 170. Sedg. on Const.. of Stat. and Con. Law [2 Ed.], 337, 338; *Oshkosh v. Ins. Co.,* 71 Wis. 454; *Ins. Co. v. Leslie,* 24 N. E. Rep. (Ohio) 1072. (4) Where several concurrent policies of insurance upon real property have been written with the consent of the respective companies

and the property is wholly destroyed, the aggregate amount of such insurance must, under section 6009, Revised Statutes, 1879, "be taken conclusively to be the true value of the property when insured, and the true amount of loss and measure of damages when destroyed." *Gaslight Co. v. Ins. Co.*, 71 Wis. 454; *Barnard v. Ins. Co.*, 38 Mo. App. 106. (5) The property insured in the several policies as "fixed and movable machinery, shafting, gearing, etc.," must be held to be "real property" and a part of the mill building, within the meaning of section 6009, in arriving at the measure of damages. (6) When a building is erected for a particular purpose, and machinery is placed therein to effectuate that purpose, and is reasonably necessary therefor and attached in some substantial manner, it becomes a part of the realty. *Roddy v. Brick*, 43 N. J. Eq. 218; *Ins. Co. v. Semple*, 38 N. J. Eq. 575; *Tillman v. DeLacey*, 80 Ala. 103; *Winslow v. Ins. Co.*, 4 Metc. 306; *McLaughlin v. Nash*, 14 Allen, 136; *McConnell v. Blood*, 123 Mass. 47; *Pierce v. George*, 108 Mass. 78; *Kettredge v. Wood*, 3 N. Y. 504; Amos & Terrant on Fixtures, ch. 4, 132, 151; *Powell v. Co.*, 3 Mass. 459–464; *Goddard v. Chase*, 7 Mass. 432; *Gaffield v. Hapgood*, 17 Pick. 192; *Noble v. Bosworth*, 19 Pick. 314; *Despatch Pkt. Line v. Co.*, 12 N. H. 232; *Hendy v. Denkerhoff*, 57 Cal. 3. (7) The property insured by the policies in suit was "wholly destroyed" within the meaning of section 6009, Revised Statutes, 1879. *Nave v. Ins. Co.*, 37 Mo. 430; *Barnard v. Ins. Co.*, 38 Mo. App. 106; *Seyks v. Ins. Co.*, 41 N. W. Rep. (Wis) 443. (8) Even if section 6009 did not apply to the policies in question still we insist that the measure of recovery by insured would not be, either in case of partial or total loss, upon the basis of what the property had sold for, or might sell for in the market, but upon the basis of the actual cost of the restoration of the property sub-

stantially to the condition in which it was before the fire. In its judgment in this case the court based its finding of the value of the insured property at the time of the fire on the isolated fact in evidence of the price which Sage had agreed to pay plaintiffs therefor shortly before the fire.

*Gage, Ladd & Small* for respondents.

(1) Havens and Richardson did not appeal, and their rights are not before this court, and it is, therefore, immaterial whether the court below was right or wrong, in fixing the amount or measure of damages on the policies sued on. *Gilbert v. Port*, 28 Ohio St. 276; *Michael v. Ins. Co.*, 17 Mo. App. 23; *Milling Co. v. Ins. Co.*, 25 Mo. App. 259. (2) The fact the policies of the Ætna and Hartford Insurance Companies had a provision that the loss, if any, was payable to Sage, "as his interest might appear," does not aid the appellants. Both of these policies insured Havens and Richardson, as owners, against loss. Under the contract between them and Sage, it was contemplated that Sage might acquire an interest in the property before the policies expired, or a loss might happen. (3) The only right which Sage had in the nature of an insurable interest at the time this insurance was taken out, or at the time of the fire, was the right to complete the improvements contemplated, at his own expense, and then to become the vendee of the property at $4,250. (4) Again, even if this inchoate right of Sage had been insured as a separate and independent risk, or subject of insurance, still, section 6009 of the Revised Statutes, 1879, relied on, would have no application in his favor. "It will be noticed that the statute relates solely to real property which the parties can see and fix a value upon when the insurance is effected." *Riley v. Ins.*

*Co.*, 43 Wis. 458.   (5) But waiving all other consider-
ations, and for the sake of the argument, admit that
Sage was, at the time of the fire, a vendee, or, even
absolute owner of the property, still the statute could
not apply.   *First.*   Because the policies were all float-
ing policies.   1 Wood, Fire Insurance, secs. 40, 41;
*Reiley v. Ins. Co.*, 43 Wis. 458.   *Second.*   If, as the
appellants so stoutly contend, the building and
machinery were all one—one entire subject of insur-
ance—all real property—then the statute can not
apply, because that entire subject of insurance was not
a total loss.   If, taking their line of argument, the
machinery was a part of the building, then the build-
ing was not "wholly destroyed," because the most
valuable part of the machinery was uninjured by the
fire.   *Ampleman v. Ins. Co.*, 35 Mo. App. 309; *Ample-
man v. Ins. Co.*, 35 Mo. App. 317.   *Third.*   The prop-
erty insured must not only have been wholly destroyed,
but "without criminal fault on the part of the
assured," to make the statute applicable.   There is no
allegation that the fire ocurred without criminal fault.
*Fourth.*   But not only did the cross-bill of Sage fail to
allege that the fire occurred without his criminal fault,
but he failed to prove that fact.   *Manz v. Railroad*,
87 Mo. 281, and cases cited.   (6) In the absence
of a statute, the measure of damages is not what it
would cost to rebuild, as suggested by appellant's
counsel, but the money value of the building under all
the circumstances of its situation and surroundings at
the time of the fire.   7 Am. and Eng. Encyclopedia of
Law, title, Fire Insurance, p. 1050, sec. 10, and cases
cited; *Ins. Co. v.* ————, 98 Pa. St. 451; *Brinley v.
Ins. Co.*, 11 Metc. (Mass.) 195; *Ins. Co. v. Johnson*,
11 Bush. (Ky.) 586.   All the policies expressly pro-
vided that damages should in "no case exceed the

actual cash value of the property at the time of the fire." (7) That the statute does not apply to the insurance on the machinery would seem to be too clear for extended argument. *First.* The machinery was not real estate, but personal property. It has been so ruled. *Packing Co. v. Ins. Co.*, 31 Fed. Rep. 200; *Queen Ins. Co. v. Ice Co.*, 64 Tex. 578. And the law generally is, that whether personal property is to be considered real estate, depends on no fixed rule, but on the relation and intention of the parties, and the transaction out of which the controversy arises. Here in making their contract, the parties expressly separated the personal property—the machinery—from the real estate—the building—and insured each separately, and the courts will, therefore, not join them together and consider the personal property real estate. *Elliott v. Wright*, 30 Mo. App. 217, and cases cited; *Ford v. Cobb*, 20 N. Y. 344; *Fratt v. Whittier*, 58 Cal. 132; *Smith v. Waggoner*, 50 Wis. 162; *Frederick v. Devall*, 15 Ind. 357; *Warner v. Kenning*, 25 Minn. 173; *Robertson v. Cossett*, 39 Mich. 777; *Hunt v. Iron Works*, 97 Mass. 279; *Breasley v. Cox*, 24 N. J. L. 287; *Sampson v. Graham*, 96 Pa. St. 405. *Second.* But even if the machinery could be considered real estate, the statute does not apply to the insurance on it, because the better part of the machinery was not burned nor injured. The machinery saved was as good in all respects as it ever was, and was intended to be used again. It could be used in any other mill. The machinery insured was, therefore, not "wholly destroyed," and the statute has no application. *Ampleman v. Ins. Co.*, 35 Mo. App. 309; *Ampleman v. Ins. Co.*, 35 Mo. App. 317; *Barnard v. Ins. Co.*, 38 Mo. App. 107.

## STATEMENT.

This appeal is a dispute between two parties of defendants in a suit upon certain fire insurance policies.

The original plaintiffs were Havens and Richardson, but for brevity we shall refer to them often as "Havens & Company;" and to the present appellants as "Sage & Company." We shall also occasionally treat the fire insurance companies as one group.

Havens & Company began the suit by a petition to recover upon the policies, whose general features will be mentioned later. Mr. Sage and certain other parties claiming under him were made defendants, along with the insurance companies.

Mr. Sage filed a separate answer, asserting an interest in the proceeds of the policies, based on facts hereafter stated. The other defendants, who claimed rights under Sage, set up their respective interests. They need not be particularly described.

The answers of the insurance companies were in the nature of cross bills of interpleader, declaring that Havens & Company and Sage & Company both laid claim to the proceeds of the funds sued for, and that the companies were ready to pay to the parties entitled thereto any sums justly due under the policies. These answers also set up facts, referred to further along, bearing on the extent of liability of defendants under the terms of the policies.

The cause was tried by the court, and the following judgment rendered:

"And now come all the parties to this suit by their respective counsel, and trial by jury having been waived, and this cause having been submitted to the court for trial, and the court being well advised in the premises, doth find that the property described in

plaintiffs' petition was insured by the above named insurance companies, in and by their five written policies of insurance, against loss or damage by fire, as follows:

"On the two story, frame, shingle roof building and additions, and one story, frame engine and boiler house adjoining, occupied as a steam flouring mill in Waldron, Missouri, in the following amounts:

| | |
|---|---:|
| The Hartford Fire Insurance Company | $  500 |
| City of London Fire Insurance Company | 250 |
| Connecticut Fire Insurance Company | 750 |
| Ætna Fire Insurance Company | 500 |
| Germania Fire Insurance Company | 750 |
| | $2,750 |

"And on the fixed and movable machinery, shafting and gearing, except boiler and engine connections, contained in the above described building in the following amounts:

| | |
|---|---:|
| The Hartford Fire Insurance Company | $1,500 |
| City of London Fire Insurance Company | 750 |
| The Connecticut Fire Insurance Company | 650 |
| Ætna Fire Insurance Company | 1,250 |
| | $5,650 |

"That said insurance was effected for the use and benefit of plaintiffs to the extent of their interest in said property, and, after satisfying the same, then for the use and benefit of defendant Theodore B. Sage.

"That at the time of the hereinafter mentioned fire the interest of said plaintiffs in said property was in the sum of $4,250 and interest, and after satisfying the same and subject to the same the equitable title to said property then belonged to said defendant Sage.

"That on the sixth day of January, 1885, said property was damaged and destroyed by fire, and the value of the property so damaged and destroyed the court finds to be $3,695, as follows: Buildings, $1,575;

machinery, $2,120; and the court arrives at this finding of values as follows:

"The court finds that the total value of the mill property, including adjoining buildings and machinery and fixtures and the ground on which it was situated at the time of the issuance of the policies was $4,250. That one building, which was not insured and was not destroyed by fire, was of the value of $300. That the land after the fire was of the value of $100. That the engine in the mill, which was not insured, was of the value of $300. That the machinery which had been taken out of the mill while the same was undergoing repairs and which was not destroyed by fire was of the value of $380.

"And the court finds that the defendant Sage, after the issuance of the policies, had put on the mill building in pursuance to and in compliance with his contract with plaintiffs, repairs to the value of $525 in improvements, which were destroyed by fire.

Total value of property....  ................ ................ $4,775
Deduct as above.......................................  ...........  1,080

Leaving the value of the property destroyed by fire....  ......... $3,695

"That said policies sued on were at the time of the fire in force and the plaintiffs and said defendant Sage had prior to said fire and to the commencement of this suit complied with all the conditions thereof on their part.

. "That said defendant insurance companies are indebted to plaintiffs in the sum of $3,695 with interest thereon from April 22, 1885, in the proportion that the respective amounts of their policies of insurance and the loss thereunder as above set forth bear to each other.

"The court further finds that after the tenth day of January, 1885, said Sage assigned and delivered said

policy so issued by the Hartford Fire Insurance Company to defendant Harrington to secure an indebtedness to him, said Harrington, of $500, and that afterward defendant Sage assigned and delivered the policy so issued to him by said Ætna Fire Insurance Company to defendant McAdam, and also assigned in writing to said McAdam said policy so issued by said Hartford Insurance Company for the purpose of securing the payment to said McAdam of a debt due by him, said Sage, to said McAdam, of ——— dollars.

"It is therefore considered, ordered and adjudged that said plaintiffs, A. B. Havens and George C. Richardson, have and recover of and from said defendant Hartford Fire Insurance Company the sum of $959.55. And have and recover of and from the said defendant City of London Fire Insurance Company the sum of $497.80. And have and recover of and from the said defendant Connecticut Fire Insurance Company the sum of $761. And have and recover of and from the said defendant the Ætna Fire Insurance Company the sum of $959.55. And have and recover of and from the said defendant the Germania Fire Insurance Company the sum of $1,015.85, with interest at the rate of six per cent. per annum from this date, together with the costs of this action, and that execution issue therefor.

"That said defendants, Theodore B. Sage, D. H. McAdam and L. Harrington, have and recover of and from the said defendant insurance companies nothing, and that their cross bill and petition in their answers herein contained be dismissed."

From that judgment, Messrs. Sage and McAdams appealed, after moving unsuccessfully for new trial.

At the trial, the value of the items of property insured formed a subject of contention, on which the evidence was very conflicting; but with that exception

the controlling facts were not seriously controverted and many of them are mutually admitted here.

The following is a brief outline of the facts:

In 1882 the plaintiffs, Havens and Richardson, bought the "Waldron Mill," in Platte county, Missouri, paying therefor the sum of $6,000; $3,000 cash and one hundred and sixty acres of land, valued at $3,000. They improved the mill by adding new machinery and a new siding, at some cost. The mill was a frame building; the main part, thirty-two by forty but, with a wing on either side sixteen by thirty-two feet, and a coal and engine room in the rear thirty by forty feet. The main building was two and one-half stories high and the wings, one story. The mill had a capacity of about one hundred barrels per day. They ran the mill from July, 1882, till June, 1884, when they negotiated a sale to Mr. Sanders for $6,000, but the sale was never consummated. November 8, 1884, they entered into a contract of sale with Mr. Sage, one of defendants in this action, by the terms of which he agreed to pay Havens & Richardson $4,250 for the mill, warehouse, machinery, etc., and to expend at least $2,000 in changing it from the burr process to the roller process; to complete the alterations within forty days, and to keep the property insured to the amount of $4,250 in companies acceptable to Havens & Richardson (loss payable to them), until payment of the purchase price.

Sage took possession on November 16, 1884; began work under his contract and effected the following insurance:

Germania Fire Insurance Company:

"$750 on the two-story frame shingle roof building and additions, and one-story frame engine and boiler house adjoining, occupied as a steam flouring mill.

"$1,250 on fixed and moveable machinery, shafting and gearing, except boiler and engine and connections."

Ætna Fire Insurance Company:

"$500 on the two-story frame shingle roof building and additions, and one two-story frame engine and boiler house adjoining, occupied as a steam flouring mill.

"$1,500 on fixed and moveable machinery, shafting and gearing, except boiler, engine and connections."

City of London Fire Insurance Company:

"$250 on the two-story frame shingle roof building and additions, and one-story frame engine and boiler house adjoining, occupied as a steam flouring mill.

"$750 on fixed and movable machinery, shafting and gearing, excepting engine, boiler and connections."

Hartford Fire Insurance Company:

"$500 on the two-story frame shingle roof building and additions, and one-story frame engine and boiler house adjoining, occupied as a steam flouring mill.

"$1,500 on fixed and moveable machinery, shafting and gearing, except the boiler, engine and connections, contained in the above described buildings."

Making a total of $7,000 insurance. The Germania and City of London policies were taken out in the name of Havens & Richardson in accordance with contract. The Ætna and Hartford policies were taken out in the name of Havens & Richardson, but "loss if any payable to Sage, as his interest may appear." The premiums on all the policies were paid by Sage. Besides the foregoing insurance, there was an unexpired policy of the Connecticut Fire Insurance Company, of Hartford, which had been taken out in the name of Paul E. Havens, and which was assigned, November

19, 1884, by him to the firm of Havens & Richardson, Sage paying the premium for the unexpired term. This policy insures against loss and damage as follows:

"$750 on his two-story frame shingle roof building and additions, and one-story frame engine and boiler house adjoining and $650 on fixed and moveable machinery, shafting and gearing, belting, tools and implements and fixtures contained therein."

In each of these policies of insurance, $10,000 concurrent insurance was permitted, and also the right to put in rollers and make necessary changes. At the time of the sale to Sage, the engine bed in the mill needed repairing. Havens & Richardson had been carrying between $8,000 and $9,000 insurance on the mill. On the night of January 16, 1885, while all of the policies were in force, the mill was totally destroyed by fire, with the exception of some machinery (found by the trial court to be worth $380) which had been taken out of the mill and placed in a warehouse. At the time of the fire, Sage had completed some of the alterations but had not yet put in the roller machines. In changing to the roller process nearly, if not quite, all the machinery used in a burr mill is used.

Proofs of loss were sent the companies more than sixty days before the institution of this action by both Havens & Richardson and Sage.

Each of the defendant insurance companies refused to pay to Havens & Company the amounts written by it respectively, claiming that the other companies were liable for a part or portion thereof and that the defendant Sage made and set up claim on account of the loss, and that it could not pay the same or any part thereof, unless each and all of the defendants be required to set up their respective claims.

The other material facts appear in the opinion.

GANTT, J.—All the policies of insurance sued on in this case were written and issued in November, 1884, after section 6009, Revised Statutes, 1879, had become a law of this state. Several of said policies contained a stipulation that in case of loss, the damage should be estimated according to the actual cash value of the property at the time of the loss or fire, which should, in no case, exceed the cost of replacing or restoring the burnt property, whereas section 6009, Revised Statutes, 1879, provided: "Whenever any policy of insurance shall be written to insure any real property, including building or buildings owned separate from the realty, as well as such as are a part of the realty, and the property insured shall be wholly destroyed, and without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property when insured, and the true amount of loss and measure of damages when destroyed, and the company may either pay the amount written in such policy, in cash, or rebuild and restore such building to its original condition as to value, size, plan and general finish, such work of rebuilding to commence within sixty days after the destruction of such building and be completed with all possible speed, and to clear and remove all debris from the premises."

It is assumed by the appellants, Sage and his assignees, that if the conditions as to the subject-matter of the insurance and the nature of the loss bring these policies within the terms of this section, then the stipulations of the policy must yield to the statute, and this is not seriously controverted by the insurance companies, their only contention being that the case is without the statute. It is now the established rule that,

if the facts bring the case within the regulations pre-
scribed by law, the statute enters into and forms a part
of the contract of insurance as completely as if written
into it.

Thus in *White v. Ins. Co.*, (4 Dillon (U. S. C. C.)
177) Judge DILLON, speaking of certain provisions in
life insurance policies issued in this state after the enact-
ment of section 5849, Revised Statutes, 1889, said:
"The legislature of Missouri conceived, and we think
wisely, that the promises held forth to the assured in
the policies in general use were too often a delusion and
a snare, and as the courts were powerless to correct the
evil, it ought to be corrected by statute.  *  *  *  We
are of opinion that policies issued and delivered in
Missouri, after that act took effect, fall within its pro-
tective operation; and as to such policies the act is to
be treated as if incorporated therein.  *  *  *  The
general rule is that laws in existence are necessarily
referred to in all contracts made under such laws, and
that no contract can change the law." To the same effect
may be cited *Wall v. Society*, 32 Fed. Rep. 273; *Queen
Ins. Co. v. Leslie*, 24 N. E. Rep. 1072; *Chamberlain v.
Ins. Co.*, 55 N. H. 249; *Reilly v. Ins. Co.*, 43 Wis. 449;
*Thompson v. Ins. Co.*, 43 Wis. 388; *Bammessel v. Ins.
Co.*, 43 Wis. 463; *Cayon v. Ins. Co.*, 68 Wis. 510; *Osh-
kosh Gaslight Co. v. Ins. Co.*, 71 Wis. 454; *Emery v.
Ins. Co.*, 52 Me. 322; *Barnard v. Ins. Co.*, 38 Mo. App.
106.

Section 6009, Revised Statutes, 1879, by its terms,
applies to policies written on "real property" and to
cases where the property is "wholly destroyed."

I.    The defendants, the insurance companies, insist
that the statute has no application to cases of concur-
rent insurance, but governs only in cases of single pol-
icies.    This last contention we regard as untenable.

We hold that where several concurrent policies of insurance upon real property have been written with the consent of the respective companies and the property is wholly destroyed by fire the aggregate amount of such insurance must, under section 6009, Revised Statutes, 1879, be taken, conclusively, to be the true value of the property insured and the true amount of the loss and measure of damages when so destroyed.

We think there can be no valid reason why the mere fact that several companies assume each a part of the whole risk should affect the operation of the statute. If, in order to induce good faith on the part of the insured, and thus give greater security to the insurer, the companies desire to make the owner bear a portion of the risk, this protection can readily be secured by limiting the amount of concurrent insurance.

The insurance is written by the consent of all the companies and it must be presumed that when each consented to the additional insurance by the others, in its opinion and estimation, the total insurance was not excessive or disproportioned to the value of the property. The amount written in each policy is expressly assented to by all the other insurers, and they must be held to agree that the aggregate of their several policies is the value of the property. To hold otherwise is to repeal the statute in every case where there is more than one policy on the same property, whereas it was intended to apply to all. When we consider the well known custom of the different agencies representing often a number of companies, and distributing the insurance they write equitably among their several principals, we can readily see how easily under this contention they can render the statute nugatory in the most important risks. We think the statute is as obligatory in concurrent as in a single policy. *Barnard v. Ins.*

*Co.*, 38 Mo. App. 106; *Oshkosh Gaslight Co. v. Ins. Co.*, 71 Wis. 454; *Ins. Co. v. Ice Co.*, 64 Tex. 578.

II. We next inquire whether the subject-matter of the insurance brought it within the statute.

It was and is an elementary principle of common law that land includes all houses and buildings standing thereon; that whatever is affixed to the soil is thereby made a part of it and passes by a grant of the land without other designation. Personal property prepared and intended to be used with the land, having been affixed to it and used with it becomes a part of it by accession. To this general principle are the equally well settled exceptions as to trade fixtures and the relaxation in favor of the tenant as between landlord and tenant and tenants for life and remainder-men, with which we are not concerned in this case. While the diversity of opinions on the subject of fixtures, is bewildering, it is generally held that millstones, hoppers, and bolting apparatus as usually adjusted in a mill or machinery in a factory, constitute a part of the real estate and will pass by deed or mortgage of the mill itself, and descend as real estate to the heirs at law. *Rogers v. Crow*, 40 Mo. 91; *Thomas v. Davis*, 76 Mo. 72; *Teaff v. Hewitt*, 1 Ohio St. 528; *Winslow v. Ins. Co.*, 4 Metc. 306.

So that we take it, that a deed or mortgage of the land upon which the Waldron Mill stood would *prima facie* have passed not only the building but all of the machinery described in the policies in suit.

Affixed as it was and constructed and adapted as it was and placed in the mill to be used in and as a part of it, it would have passed by a grant of the real estate as a part of it. This we think is not seriously questioned as a general rule, but the contention is that while this is true, yet there are cases in which property so used, has by consent and agreement of the owner and

mortgagees been treated as personal property and that in such case the law will regard their agreements and so consider it.

Unquestionably there are many such cases but they depend upon the peculiar facts in each, and do not controvert any positive statute. *Smith v. Waggoner*, 50 Wis. 155, and cases cited. Two reasons occur to us why this exception should not apply in this case. The first, and by far the most cogent, is that such a construction, is against the policy and spirit of the statute. In construing this and similar statutes, the authorities already cited announce with great clearness that this statute is founded upon reasons of public policy and where provisions of the policy run counter to those of the statute, the statute controls. Thus when the policies provide that "the loss shall be estimated according to the true and marketable value," it was held the stipulation could not stand because the statute fixed the amount written in the policy as the amount of recovery and precluded an inquiry into value, nor was an agreement to submit to arbitration allowed in the face of such a statute. *Thompson v. Ins. Co.*, 45 Wis. 388; *Thompson v. Ins. Co.*, 43 Wis. 459–463; *Seyk v. Ins. Co.*, 41 N. W. Rep. 443. And in *Queen Ins. Co. v. Leslie*, 24 N. E. Rep. 1072, the supreme court of Ohio, discussing a similar statute requiring the companies to examine the premises before issuing their policies, and then providing that the amount named in the policy should fix the damages in the absence of intentional fraud, in reply to the claim that the parties might make a different agreement, says: "The statute can not be treated as conferring upon the assured a mere personal privilege which may be waived or qualified by agreement. It has a broader scope. It moulds the obligation of the contract into conformity with its provisions and establishes the rule and measure of the

insurer's liability. Terms and conditions embraced in the policy inconsistent with the provisions of the statute are subordinate to it and must give way."

In *Wall v. Society*, 32 Fed. Rep. 273, Judge BREWER, in discussing the right of the parties to waive the Missouri statute as to forfeiture after the payment of two annual premiums, held that a provision in a policy which required three annual payments before the insured was entitled to temporary insurance, was void and in contravention of the statute.

Keeping in view, then, the manifest purpose of our legislature to give greater security to the insured, we hold that it is not competent for insurance companies under this statute to avoid their fixed liability for losses on real property by agreeing with the owner to denominate it personal property, and thus by a mere stroke of the pen deprive its owner of the protection of this statute, when for all other purposes in law it is real estate.

But, secondly, independent of the policy of the statute, it is clear this statute was enacted for the benefit of the insured, and if a waiver be allowed, it ought to clearly appear that it was his intention to give up the protection secured by the statute, and we do not think these policies evince such a design. The separate valuation is the only foundation for this claim; but it will be observed that it nowhere designates it as personal property. While the policy specifies the property insured, it leaves it to the law to define its character, and, by the description given, the law denominates it real property.

Reading the whole policy together it was, after all, simply the insurance of the Waldron Mill and not the several elements that went to constitute it. We think the fair and reasonable construction of the policy is that

it was written on real property and is within the protection of the statute.

III. Was the property "wholly destroyed," within the meaning of section 6009, Revised Statutes, 1879?

The facts themselves largely determine this question. All the property insured, the mill building and all of the machinery in it, was wholly destroyed, but it so happened that pending the repairs, Sage had removed a part of the machinery and stored it in another building, which was not exposed to the fire. The portion thus saved was found by the circuit court to be of the value of $380. Does the fact that this small amount was not destoyed under the circumstances take the loss out of the statute? The property was valued at $8,400 in the policies, and the right to repair and make improvements was expressly given. This small amount of machinery was removed for a legitimate purpose, and in strict accordance with the terms of the policies and was a mere trifle compared to the whole. Had it been in the mill at the time of the fire and been saved by the exertion of the owner, or his neighbors, would it have been a total loss? It seems to us there ought to be but one answer to this contention.

If defendant's contention be carried to its logical conclusion, if a manufacturer should be compelled to remove a piece of his machinery and send it to a repairer and his mill burn before its return, it would not be within the protection of the statute.

The terms of purchase by Sage from Havens stipulated for a change to a roller mill. If in effecting this change some of the old machinery was useless and not adapted to the roller process and had been stored in this other building pending the repairs and the mill had burned with all the remaining machinery, would it be seriously contended that it was not a total loss? Surely

not. The useless machinery that was not exposed to the risk, would reduce the valuation to that extent, but certainly would not affect the risk otherwise.

We do not think that the question of partial loss can arise under these circumstances. All the property covered by the policy at the time of the fire was wholly destroyed. The property insured was a mill and the fire destroyed its identity and specific character as such.

The words "wholly destroyed" have been placed in statutes like this in many of the states of the union, and, so far as we have been able to find, the construction appears to be uniform that, as applied to buildings, they mean totally destroyed as a building, although there is not an absolute extinction of all its parts.

It matters not that some debris remains which may be useful or valuable for some purposes. Such was the construction given in the subjoined cases and such is our construction. *Williams v. Ins. Co.*, 54 Cal. 442; *Seyk v. Ins. Co.*, 41 N. W. Rep. 443; *Barnard v. Ins. Co.*, 38 Mo. App. 106; *Oshkosh, etc., Co. v. Ins. Co.*, 31 Fed. Rep. 200; *Ins. Co., v. Sherlock*, 25 Ohio St. 59; *Wallerstein v. Ins. Co.*, 44 N. Y. 204; *Ins. Co. v. Fogarty*, 19 Wall. 640.

We think the circuit court erred in not applying section 6009, Revised Statutes, 1879, to the facts and in not holding that the aggregate of the policies conclusively fixed the value of the mill and machinery and the measure of damages, less the sum of $380, the amount of machinery not exposed to the fire. 1 Wood on Ins., p. 100; *Lewis v. Rucker*, 2 Burr. 1167. As the circuit court found the insured had complied with all the conditions on their part and the only question being whether the statute applied, it would appear unnecessary to put the parties to the cost of another trial, hence the judgment is reversed with directions to

the circuit court to render a decree for the aggregate amount of said policies, less $380, with interest at six per cent. thereon from the time of filing the cross bill by Sage and his assignees and distribute the fund as the rights of the plaintiffs and Sage, McAdams and Harrington to the same shall appear.

BLACK, C. J., BRACE, BURGESS, MACFARLANE, and SHERWOOD, JJ., concur. BARCLAY, J., dissents.