## STEVENS, Respondent, v. NORWICH UNION FIRE INSURANCE COMPANY, Appellant.

### St. Louis Court of Appeals, July 9, 1906.

1. **INSURANCE: Valued Policy: Total Loss.** Under sections 7969 and 7970, Revised Statutes of 1899, a policy of insurance covering a building is a valued policy and in the event of the total loss of the building by fire, the amount for which the building is insured conclusively fixes the measure of damages which the insured may recover, less only the amount the property may have depreciated during the time from the issuance of the policy to the time of the loss.

2. ————: ————: ————: **Appraisal.** Where there has been total loss of a building insured by a valued policy under section 7969, a stipulation to arbitrate in case of disagreement is inoperative because there can be no question as to the amount of the loss which is fixed by the statute and amount of the policy.

3. ————: ————: ————: **Destruction of Building.** Insurance upon the building is insurance upon the building as such and not upon the material of which it is composed, and a building is totally destroyed by fire so as to entitle the insured to recover the amount for which it was insured whenever it has lost its identity and specific character as a building, by means of the fire, and has become so far disintegrated that it can no longer be properly designated as a building even though parts of it remain standing.

4. ————: ————: ————: ————: In an action on an insurance policy upon a building, where the jury was required to find that the building by means of the fire had lost its identity and specific character as a building so that it could not be properly designated as a building even though a portion of it remained standing; and to find that the portion which remained standing

was not such as a reasonably prudent man would use as a basis on which to rebuild, in order to find a verdict for the plaintiff, and those findings were supported by substantial evidence, the verdict conclusively settled that the loss was total.

5. ———: **Appraisal: Personal Property.** A provision in an insurance policy upon chattels requiring, in case of disagreement as to the amount of loss, that it should be ascertained by appraisers, is valid and will be enforced as a condition precedent to the right of the insured to recover for a loss.

6. ———: **Chattels: Total Loss.** Where household goods valued at eight hundred dollars were insured for $600, consisting of several articles, and articles of the value of one hundred dollars were saved, the loss was not total although the remaining goods were destroyed, and the insured could not recover for the loss when it was shown that he had not complied with the provisions of the policy providing for an appraisal.

7. ———: ———: **Valued Policy.** Section 7969, Revised Statutes 1899, makes a policy of insurance upon chattels a valued policy in so far as it precludes a denial by the company of the value of the goods at the time the policy was issued, but does not go further.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED (*with directions*).

*Green & Green* and *Fyke & Snider* for appellant.

(1) There can be no total loss of a building so long as that part of the structure standing is reasonably adapted for use as a basis upon which to restore it to the condition in which it was before the injury; that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis. Ins. Co. v. McSutyre, 35 L. R. A. 672; O'Keefe v. Ins. Co., 140 Mo. 558, 41 S. W. 922; Havens v. Ins. Co., 123 Mo. 423, 27 S. W. 718; Appleman v. Ins. Co., 35 Mo. App. 308, 317. (2) The court erred in refusing

defendant's demurrer to the evidence in so far as the loss upon the household goods was concerned. Murphy v. Ins. Co., 61 Mo. App. 323; McNees v. Ins. Co., 61 Mo. App. 335; Dantil v. Ins. Co., 65 Mo. App. 50; M'cNees v. Ins. Co., 69 Mo. App. 235-244; Balis v. Gilbert, 84 Mo. App. 675; Vining v. Ins. Co., 89 Mo. App. 311; Carp v. Ins. Co., 89 Mo. App. 311; Carp v. Ins. Co., 104 Mo. App. 502, 79 S. W. 757; Fowble v. Ins. Co., 106 Mo. App. 527, 81 S. W. 485.

*Livingston & Burroughs* for respondent.

(1)    Respondent bases his case on the proposition that there was a total loss of the property insured, in the meaning of the law, and that all stipulations in the policy for arbitration are therefore nugatory. O'Keefe v. Ins. Co., 140 Mo. 558, 41 S. W. 922; Barnard v. Ins. Co., 38 Mo. App. 106; Havens v. Ins. Co., 123 Mo. 403, 27 S. W. 718.    (2)    In case of a total loss an agreement to arbitrate contained in the policy is repugnant to the statute and wholly void.    Marshall v. Ins. Co., 80 Mo. App. 18.    (3)    If the household goods had been insured in a separate policy and had been destroyed without any reference to the house, there still would have been a total loss under the facts in this case in the legal meaning of term, and arbitration would not have been necessary or proper.    Under the law as it now stands the policy on personal property is a valued policy.    R. S. 1899, sec. 7979; Gibson v. Ins. Co., 82 Mo. App. 515; Howerton v. Ins. Co., 105 Mo. App. 575, 80 S. W. 27.

STATEMENT.—This is a suit on a policy of fire insurance issued by the defendant insurance company in favor of the plaintiff, covering a frame residence and household goods therein owned and occupied by him in the city of West Plains. In so far as material to the

questions involved in the present controversy, the policy in suit is as follows:

"Norwich Union Fire Insurance Society in consideration of $20.70 premium and the conditions and stipulations herein contained, does hereby insure A. J. Stevens against loss or damage by fire from noon of the 2d day of December, 1904, to noon of the 2d day of December, 1907, as follows:

"Nine hundred dollars on one and one-half story shingle roof frame building and additions attached thereto, while occupied as a private dwelling-house, including all permanent fixtures and decorations and to include window and door screens, storm doors and awnings, while contained in or attached to said buildings, situate on lot 2, block 12, Howell's addition, West Plains, Missouri.

"Six hundred dollars on household furniture, useful and ornamental, mirrors, beds, bedding, linen, family wearing apparel, watches and jewelry (in use), printed books and music, silver plate and plated ware, pictures, paintings, engravings and their frames (at not exceeding cost), sewing machines, musical instruments, fuel and family stores, trunks, satchels, canes, umbrellas and bric-a-brac, while contained therein.

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; said ascertainment or estimate shall be made by the insured and this company, or if they differ, then by appraisers, as hereinafter provided; and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due

notice, ascertainment, estimate and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part, of the article at such ascertained or appraised value, and also to repair, rebuild or replace the property lost or damaged with other of like kind and quality within a reasonable time on given notice, within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described.

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss; stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire.

"And the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required."

The petition is in the usual form, alleges a total destruction by fire of the property insured and the full performance by the plaintiff of all conditions of the policy on his part. The answer admits the issuance of the policy and a loss by fire thereunder, and among other things, specifically denies that the dwelling house was wholly destroyed, and affirmatively pleads the condition of the policy quoted, which provides, in effect,

that in event of loss and disagreement between the parties as to the amount thereof, the same shall be ascertained by competent appraisers, etc. It avers that after the fire, a disagreement arose between plaintiff and defendant with respect to the amount of the loss on both the building and household goods, so that an appraisal thereof was required and that no such ascertainment of the loss by appraisal has been had, and that therefore plaintiff is not entitled to recover. It further denies every allegation in the petition contained which was not expressly admitted to be true. The reply is a general denial. The proposition advanced by the plaintiff and upon which he predicates his suit is that the loss was total on both the residence and contents; or, in other words, that the property, both real and personal, was wholly destroyed within the meaning of the statute and therefore the condition of the policy with respect to arbitration does not apply, while the counter-proposition advanced by the insurance company is that the loss was partial only on both the residence and household goods and therefore the arbitration agreement in the policy does apply and operates as a condition precedent to plaintiff's right; and the plaintiff, having failed to comply with this condition, no recovery can be had.

Aside from the facts that the plaintiff owned the property and held defendant's policy of insurance thereon, containing the arbitration condition mentioned, the facts on the part of the plaintiff tended to prove that while the policy was in full force and effect, the building was discovered to be on fire during the night of March 19, 1905, which fire totally destroyed a portion of the building, an ell thereof, at least, and so burned between the weatherboarding and walls, and between the ceiling and floors and under the shingles on the roof and in several of the rooms, as to totally destroy the identity of the same as a building, to such an extent that it is doubtful whether a prudent man, without insurance, desiring

a building of like kind, would attempt to reinstate the same without first dismembering it. Whether the building was totally destroyed within the meaning of the law is an important question in the controversy, however, and therefore a few excerpts from the record will be given.

After much evidence tending to show that the fire ran through the house, some between the walls and weatherboarding, between the ceilings and floors, and under the shingles, some of plaintiff's witnesses said in part as follows. The chief of the fire department testified:

"The alarm was not turned in until the house was past redemption. When we got there the whole house was afire; the back part of the buildng had burned down and the main front part of the building was afire inside of the rooms between the ceiling and weatherboarding, where it was hard for us to get to it, and right on the front in one place it was just seeping out and the fire was between the ceiling and the roof and the weatherboarding on the main part of the building at the top.

"Q. State if the fire was running through the rooms in the main part of the building. A. It was. It was quite a while before we could get to it; we had to put out the fire in the upper rooms.

"Q. How did you manage to put it out? A. We had to get in where we could turn the stream between the ceiling and the weatherboarding.

"Q. Do you remember anything of the fire between the floor of the upper rooms and the ceiling of the lower floor? A. Yes, sir; we cut a hole in one place to get the water to it. . . . . I think we cut the hole in the west room."

Mr. Traxler, a carpenter, testified as follows:

"The southern part of the house was all ruined, and the south half of the front of the house and top of the roof was all burned, a hole was burned out of the west

end; I don't remember of any hole being burned out of the east end. . . . .

"Q. Could the main building be repaired and made as good as it was before the fire? A. I don't know about that."

Mr. Weston, a carpenter, said:

"It is pretty well burned up except the main part of the building in front; some parts of that is fairly good yet.

"Q. What condition was it in? A. It was damaged by smoke and water and one place in front the smoke and some fire come through right at the gable end.

"Q. Could the main part of that be used in rebuilding the house, and if so, in what way? A. Some parts of it might be used in rebuilding.

"Q. In what way? A. *In tearing it down some might be found that could be used again."*

On cross-examination, he was asked:

"And you say none of it could be used again?" And he answered: *"I would not use it again."*

Mr. Goacher, a carpenter, testified as follows:

"State to the jury what condition it was in, if you can. A. It was very near all burned up; some of it is there yet.

"Q. How much of it, if any, could be used in rebuilding the house? A. Not very much; some of it could be used.

"Q. How would you do it, by tearing it down or leaving it standing? A. *By tearing it down. It is not fit to build to."*

On cross-examination he was asked the following question.

"Q. Why is the front not fit to build to? A. It was all afire inside. . . . . It looked like the house was on fire all over."

The evidence further tended to show that members of the fire department cut several holes through the roof

and also through the ends and sides of the building in order to play upon the fire beneath the roof and between the walls and ceiling; and that much damage was occasioned by the water, whereby the floors were caused to cup, etc.

On the part of defendant, the evidence tended to prove that the ell of the building only was rendered a total loss, and that the two-story or principal portion of the building was slightly damaged. Several carpenters testified that this portion of the building could be repaired and reinstated in as good condition as before the fire, at an expense of from $550 to $675. The defendant introduced in evidence, and we find in the record before us, several photographs showing the front, side and rear views of the building after the fire as well as the interior of three of the rooms, and we must say that from an inspection of these, the building, save the rear or ell portion thereof, seems to be but slightly damaged, and it is difficult to ascertain from the photographs how $550 or $675, the amount estimated by defendant's carpenters, could be expended in reinstating the building to its former condition. It seems from these that its damage was not so great. The photographs were viewed by the jury, however, as was also the building itself, for at the conclusion of the evidence, the parties stipulated to that effect, and the jury in the custody of the sheriff, were permitted to and did make a personal inspection of the burned building.

As to the loss on the household goods, the policy covered the same in the sum of $600. There were a number of articles of furniture saved from the fire. The plaintiff, in his testimony, mentioned a rocking-chair, sofa, one bed, parlor-set, dresser and a number of other small articles, on which he fixed a value. These goods were somewhat damaged. The sum total of the value of the articles rescued was, prior to the fire, $103.50; that is, according to the price he paid for them. They had

depreciated somewhat and were therefore necessarily worth less than that amount when saved. The value of the articles of household furniture totally consumed and destroyed by the fire and water was $810 when purchased by plaintiff. They, too, had depreciated somewhat in value, the amount not given.

After the fire, plaintiff gave notice and rendered proof. He claimed a total loss of both building and contents. The adjuster for the defendant insisted that the loss was partial only on both, and a disagreement having thus arisen and the plaintiff having made no move for an arbitration, the defendant made a demand, as follows:

"Fort Scott, Kansas, May 17, 1905.
"A. J. Stevens,

"West Plains, Mo.

"Dear Sir: Your papers purporting to be proofs of your loss alleged to have been sustained March 19, 1905, on property insured under Norwich Union Fire Insurance Society, policy No. 4630911, have been received and are held subject to your order.

"We object to same in that they do not represent the facts and true account of your loss and damage. We deny that the loss sustained to the property insured was any such amount, and hereby demand that said damage be left to disinterested appraisers as provided for in printed conditions of said policy relating to proceeding in case of a disagreement.

"Awaiting notice of your compliance, I am,
"Yours very truly,
"W. A. CORMANY,
"Adjuster for Norwich Union Fire Insurance Society."

Plaintiff, insisting that the loss was total, declined to arbitrate the same, and instituted this suit. Upon a trial in the circuit court, at the conclusion of the evidence on behalf of the plaintiff, defendant requested

and the court refused a peremptory instruction to find for the defendant. The same instruction was requested by defendant and refused by the court at the conclusion of all of the evidence, as was also a peremptory instruction requested by defendant to the effect that the finding should be for the defendant on the issue pertaining to the insurance on household goods.

The court submitted the issue whether or not the building had been wholly destroyed, to the jury by instructions, which instructions will be noticed in the opinion. The jury returned a verdict in effect, finding the building to have been wholly destroyed, inasmuch as by their verdict they found for the plaintiff in the sum of $900, the full amount of insurance on the building. The court instructed the jury with respect to the household goods that if their finding was for the plaintiff, they should return a verdict for him in the amount of the value of such goods as were totally destroyed by the fire, not exceeding $600, the amount of the policy thereon. As said, the verdict returned was for a total loss, or $900 on the building, and a partial loss, or $500 on the household goods.

After unsuccessful motions for new trial and in arrest, defendant prosecuted this appeal.

NORTONI, J. (after stating the facts).—As said in the statement of facts supra, plaintiff predicates his suit upon the theory that the loss on both building and furniture is total rather than partial, and that, therefore, inasmuch as the property was wholly destroyed, there could be no disagreement between the parties as to the amount of the loss. He argues that the statute fixes the amount of the policy as the measure of his damages, and therefore the amount of the loss being thus positively fixed by the statute, no disagreement can arise between the parties whereby the condition of the policy with respect to arbitration can be invoked; or in other words, that the arbitration agreement in

the policy is wholly inapplicable to the facts before the court. The proposition asserted is predicated upon two sections of our statute: first, with respect to the alleged total loss on the building on section 7969, Revised Statutes 1899, which in effect, when read with section 7970 next succeeding, provides, among other things that the policy covering the building is a valued policy, and in event of the total loss of the building by fire, the amount of the policy is thereby conclusively fixed to be the measure of plaintiff's damage therefor, less only the amount the property may have depreciated in value during the interim from the issuance of the policy to the time of the loss. It is devolved upon the company, by the statute, however, to show in defense the matter of depreciation contemplated therein, and there having been no showing in this behalf in this case, the measure of his damage is conclusively fixed by the statute to be the amount of the insurance on the building. The same proposition with respect to the loss on the household goods is predicated upon section 7979, Revised Statutes 1899, the last and concluding lines of which provide that: "No company shall take a risk on any property in this State at a ratio greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceeding." We will examine the two propositions separately, and that pertaining to the building, first in order.

It must be conceded, and in fact it so stands, for the learned counsel do not controvert it, and the law is, that if the building was totally destroyed, then under the provisions of the statute, section 7969 supra (the defendant having failed to make any showing as to the depreciation of the property after the issuance of the policy and before the fire) the measure of plaintiff's loss on the building is positively fixed by the statute to be the amount of the policy thereon, and there was, and in

the very nature of the case, can be no question or disagreement between the parties with respect to the amount of such loss. The matter (the amount of the loss) upon which the disagreement must arise in order to invoke the arbitration condition, having been thus positively foreclosed and set at rest by the provisions of the statute, there can be and is no disagreement as to the amount thereof, on which the arbitration clause can operate. This proposition is determined by the ordinary rules of logic and is amply supported by authority. It has been said that in case of a total loss on real property, under this statute, the agreement to arbitrate contained in the policy is void as being in contravention of the statutes. [O'Keefe v. Ins. Co., 140 Mo. 558, 41 S. W. 922; Marshal v. Ins. Co., 80 Mo. App. 18.] And also void for want of consideration. [Baker v. Assurance Co., 57 Mo. App. 559.]

The defendant's counsel concede the law to be as stated, but assert as a matter of fact that the building was not totally destroyed, and insist that the facts in proof show a partial loss as contemplated by section 7971, Revised Statutes 1899; that it was not a total loss, as contemplated by section 7969 supra, and therefore it is a proper subject for arbitration; that the loss, being one for arbitration, under the provisions of the policy, such arbitration provision contained in the policy is a condition precedent upon the plaintiff's right to sue, and therefore he cannot recover for the loss on said building because he has not only failed to move himself for an arbitration, but has declined to participate in the same when proposed by the defendant. An issue of fact was made up on this question by the parties and evidence pro and con introduced thereon, as will appear by reference to the statement of facts supra. It is sufficient to say here that there was substantial evidence introduced by the plaintiff tending to show the building was wholly destroyed or a total loss within

the meaning of the law, and the court did not err in refusing to peremptorily direct a verdict for the defendant on that score. Whether the building was a total loss within the meaning of the law in that behalf, was a question of fact for the jury, rather than a question of law for the court, on the evidence in this case. The court referred the matter to the jury by instruction, as follows:

"The court instructs the jury, that the only question pertaining to the building is the meaning of the term 'total loss,' and that if you believe from the evidence that the building has lost its identity and specific character as a building, and become so far disintegrated that it cannot be properly designated as a building, although some part of it may remain standing, then there is a total loss in the meaning of the law, and you should find for plaintiff, although you may believe that some parts of the building were left standing and might be safely used in rebuilding."

The jury, with this guide before it, after having heard the evidence and made a personal inspection of the building in the custody of the sheriff, in accordance with the stipulation of counsel to that effect, found the building to be a total loss. Learned counsel for defendant insist, however, that the instruction quoted is erroneous in failing to further inform the jury that the matter of the total destruction of the building depended upon the question whether a reasonably prudent man, uninsured, desiring such a structure as the one insured was before the fire, would, in proceeding to restore the building to its original condition, utilize the remnant thereof as a basis on which to build, and indeed, this seems to be a fair criterion by which the question should be ascertained, for, as a general proposition, the law, in dealing with matters not otherwise determined, usually adopts the conduct of a reasonably prudent man under like circumstances and conditions, as the proper

standard by which the conduct of others, should be regulated. The law is settled in this State, however, to the effect that a policy of insurance upon a building is an insurance upon the building as such, and not upon the materials of which it is composed. [Nave v. Ins. Co., 37 Mo. 430.] And therefore the question for decision in case of an alleged total destruction is whether the building, as a building, has lost its identity and specific character as such, by means of the fire and as a result thereof, has become so far disintegrated that it can no longer be properly designated as a building, even though some parts of it may remain standing. This is settled by numerous adjudications on the subject, and as a law proposition, it is no longer open; at least it is concluded so far as this court is concerned. In fact, it appears that the identical instruction complained of here has the approval of the Supreme Court in O'Keefe v. Ins. Co., 140 Mo. 558, 41 S. W. 922. [See, also, Ampleman v. Ins. Co., 35 Mo. App. 308; Ampleman v. Ins. Co., 35 Mo. App. 317; Barnard v. Ins. Co., 38 Mo. App. 106; Havens v. Ins. Co., 123 Mo. 403, 27 S. W. 718; Royal Ins. Co. v. McIntyre (Tex.), 35 L. R. A. 672; 2 May on Ins. (4 Ed.), sec. 412a; 4 Joyce on Ins., secs. 3026-27-28-29; 12 Am. and Eng. Ency. Law (2 Ed.), 323.] Under the authority of the O'Keefe case, supra, it would become our duty to approve the instruction in this case, whatever our views might be on the question.

On behalf of the defendant, the court, in effect, instructed the jury that the building was not totally destroyed if the portion which remained standing was such as a reasonably prudent man, without insurance, desiring such a building as the one in question was prior to the fire, would use as a basis in replacing and restoring the same to its original condition. This is the proposition of law deduced in Royal Ins. Co. v. McIntyre, 35 L. R. A. 672. The learned trial court gave the de-

fendant the full benefit thereof in its first instruction and it is in no position to complain that the jury was not sufficiently charged as to what would constitute a total loss of the building.

The result is, the jury, by its verdict, found not only that the building had lost its identity and specific character as a building and that it had become so far disintegrated that it could not be properly designated as a building, even though a portion thereof remained standing, but it found as well that the portion which remained standing was not such as a reasonably prudent man, without insurance, desiring a building like the one insured prior to the fire, would use as a basis on which to rebuild or restore the same to its prior condition. The jury, having so found, and there being substantial evidence to support the verdict, it is thereby conclusively settled that the loss was total in so far as the building was concerned, and the measure of plaintiff's damage is so fixed by the statute supra that there remains no question of the amount of the loss about which the parties could disagree, so as to invoke the condition of the policy pertaining to arbitration thereon. It is therefore the opinion of the court that the suit is not premature for the loss on the building.

2. The condition with respect to arbitration contained in the policy, is set out in full in the statement of facts, accompanying the opinion of the court. It provides in part as follows: "In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss. . . . and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received

by the company, including an award by appraisers when appraisal has been required." This, and the preceding stipulations found in the policy and quoted in the statement, clearly manifest the intention and agreement of the parties to the contract of insurance that any difference which might arise between them as to the amount of the loss or damage to the property should be submitted to appraisers as therein provided, and that the award thereon, in accordance with the provisions of the policy, should determine the amount in dispute. The amount so found does not become payable, however, until sixty days thereafter. The appraisal, when required, is clearly made a condition precedent to the obligation of the company to pay, or of the right of the plaintiff to maintain a suit therefor. While the law is abundantly well established that stipulations in contracts providing for the submission of matters pertaining to a contemplated controversy, that is, the right of action itself, and all matters incident thereto, to arbitration, are void as against public policy as tending to oust the courts of their rightful jurisdiction, it is equally well settled that provisions in contracts of the character of that here involved, which provide, not for the submission of the cause of action itself but only for the amount in dispute to arbitration, thus leaving the right of action intact and capable of judicial enforcement if necessary, are to be upheld and enforced by the law as reasonable provisions tending to the peace and repose of society in furnishing an amicable method of estimating and ascertaining the amount of damage which might otherwise become the subject of controversy and litigation. Such provisions are therefore not only upheld by the courts, but unless it appears from the contract to the contrary, they are held to be and enforced as conditions precedent upon the right of the party seeking to enforce his claim without first complying with such reasonable and just provisions.

[Murphy v. Ins. Co., 61 Mo. App. 323; McNees v. Ins. Co., 61 Mo. App. 335; Dautel v. Ins. Co., 65 Mo. App. 44; McNees v. Ins. Co., 69 Mo. App. 232; Bales v. Gilbert, 84 Mo. App. 675; Vining v. Ins. Co., 89 Mo. App. 311; Carp v. Ins. Co., 104 Mo. App. 502, 79 S. W. 757; Fowble v. Ins. Co., 106 Mo. App. 527, 81 S. W. 485; Hamilton v. Ins. Co., 136 U. S. 242.]

The policy insured $600 on household goods, and a portion of the goods covered by this item of the policy were rescued from the fire. Those saved amounted in value to about $100, those destroyed by fire, to about $800. From these facts it appears that there was not a total loss of the goods insured unless section 7979, Revised Statutes 1899, operates to produce that result as a conclusion of law upon the facts stated. That section has been interpreted to apply as well to losses under a policy of insurance on personal as on real property. [Howerton v. Ins. Co., 105 Mo. App. 575.]

Now, it must be conceded upon these facts that the loss being partial only on the household goods, the amount of such loss was a proper matter for arbitration and appraisal under the provisions of the policy, if the parties disagreed on the amount thereof, unless the statute renders a partial loss a total loss, and we do not understand such unreasonable and unjust result to have been intended by the Legislature. The principle upon which, and the reason assigned by the courts for their denial of the enforcement of the arbitration clause with respect to a total loss on real property, is that the statute absolutely fixes the amount of the loss, in case the property is wholly destroyed, to be the amount written in the policy, and therefore there can be no matter of difference with respect thereto. (And indeed, since the provision pertaining to the depreciation of property after the issuance of the policy and prior to the loss have found their way into our valued-policy statute, it seems that there might arise a question for

arbitration under it in a proper case.  But that question is not before the court, and is not decided.)   Certainly the reasons given for denying arbitration on a valued policy do not obtain on the facts of this case, for it stands admitted that all the household goods were not destroyed, and the right of arbitration is denied only where the property is wholly destroyed and a total loss is had within the meaning of the law.   Plaintiff's counsel, however, predicate their proposition upon section 7979, supra, and argue that the policy on household goods was a valued policy as well as that upon the building.   Suppose it was a valued policy.   That fact would not render a partial loss a total loss even on real estate.   The concluding words of that section, and so much of it as pertains to a valued policy on chattels, are:  "No company shall take a risk on any property in this State at a ratio greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceeding."   Let us apply this statutory rule to the facts in proof and ascertain the result of its influence.   This will render to the court the intention of the law-makers with mathematical precision.   The policy in suit on personal property is for $600.   Now, under the mandatory provision quoted, from the fact that the insurance company issued its policy thereon for $600, we must and do know as a matter of law (whether it be true or false as a matter of fact) that the goods insured were of value at least $800.   It must be and it is conclusively presumed by the operation of the statute that the value of the goods at the time of the issuance of the policy, was that sum, of which $600, the amount of the policy, is three-fourths; viz., $800.   This follows from the fact that the law forbids insurance companies to write to exceed three-fourths of the value of the goods insured.   The court must indulge the presumption of correct conduct on the part of the insurance company, and therefore the com-

pany is presumed to have written not to exceed three-fourths of such value. The result is, the law fixes for the purpose of this case, the value of the goods at the time of the issuance of the policy at $800. Having thus fixed the value, it forbids the company in any proceeding, from denying that the goods were of that value when insured, and that is the extent of the rule thereby established. Thus far the policy is valued; it goes no further than this. It does not command that for all the years of the risk covered by the policy and during its life the goods shall remain at the value of $800, or of any other amount. It operates only to fix the value at the time of the issuance of the policy and denies the right of the insurance company to thereafter say that at that time they were not of the value mentioned. No one can successfully, and the learned counsel would certainly not, argue, in event the goods were depreciated in value from any cause, after the issuance of the policy and prior to the loss, that the insurance company would be precluded from asserting their depreciation in availing itself of its right under the policy to indemnify the insured only to the amount of the loss suffered by him. That the whole theory of insurance is based upon the idea of indemnity only, is fundamental, and except something more than this is affixed by the statute or policy, the insurer, as a matter of common justice, has the right always to settle on the basis of indemnity for the loss suffered. Suppose, for instance, a stock of merchandise is insured for $3,000. The same statute applies thereto, and the company is prohibited from saying that the goods were, when insured, of a value less than one-fourth in excess of the policy, or, in other words, that their policy exceeded three-fourths of the value of the stock. The company is estopped from denying that the stock of goods was worth $4,000 when insured, yet, during the life of the policy, the merchant disposes of and reduces his stock and a total loss by fire

occurs to the amount of $2,000, would anyone argue for a moment that under the provisions of the policy, it is incumbent upon the insurance company to do more than indemnify the insured, and such indemnity would be entirely met by a payment to him of $2,000 only. No other reasonable interpretation can be placed upon the statute and this is the view entertained by the courts which have given it attention. The section of the statute quoted renders the policy on chattels valued only in so far as it precludes the company from denying their value as mentioned when the insurance was written, and aside from this, it does not influence the question in the least. [Howerton v. Ins. Co., 105 Mo. App. 575, 80 S. W. 27; Burge Bros. v. Ins. Co., 106 Mo. App. 244, 80 S. W. 342; Gibson v. Ins. Co., 82 Mo. App. 515.]

The argument that the policy was valued on the household goods and therefore the loss thereon was total, when in fact only a portion of the goods insured was destroyed, is without merit. In no sense was there a total loss on the household goods so that the statute would arbitrarily fix the amount written in the policy as the measure of damage. The loss on these goods was partial only, and the amount thereof was not foreclosed by the statute, but on the contrary, it was an open question to be ascertained by the parties, and in event of their disagreement, then by appraisers. The plaintiff having declined to participate in the appraisal when required by the provisions of the policy and requested by the defendant, he is precluded from maintaining this suit for the loss on household goods under the second item of the policy. The plaintiff relies upon Havens v. Ins. Co., 123 Mo. 423, as supporting his contention. That case is not in point and does not influence the proposition here in judgment. There the property insured was a mill. A portion of the machinery, amounting to $380 in value, had been removed from the mill pending repairs. The mill was destroyed by fire.

It was contended that the loss was not total, and the court held, first, that the machinery was real property within the meaning of the valued policy statute, section 6009, Revised Statutes 1879 (which was repealed in 1889, and replaced by one materially different, sec. 5897, R. S. 1889, the present sec. 7969, R. S. 1899) ; and second, that inasmuch as the identity and specific character of the mill was destroyed, the loss was total, notwithstanding the fact that some portions remained, and the fact that machinery of value of $380 stored in a warehouse was not injured by the fire, rendered the fact of a total loss of the mill no less. The result of the decision was to fix the face of the policy as the measure of the loss, on the theory that the identity, specific character and integrity of the mill as a mill was destroyed, and therefore the face of the policy, less the value of the machinery, $380, which was not subject to the fire and at the time not covered by the insurance, was the measure of the plaintiff's damage under the valued policy statute. It will be readily seen that the principle of that case is not pertinent here.

The learned trial judge erred. The defendant's peremptory instruction with respect to the claim for loss of household goods should have been given.

From what has been said, it results that the judgment must be reversed. The cause will be remanded with directions to the trial court to enter judgment on the verdict of the jury for the claim asserted on the loss of building, together with the costs of suit in that court, and judgment for the defendant on the claim asserted with respect to the loss on household goods. The costs of this appeal are taxed against the plaintiff. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.